## No. 13,889.

## STANDARD COTTON SEED OIL COMPANY vs. EXCELSIOR REFINING COMPANY.

### SYLLABUS.

1. A receiver, or legal representative of a succession, instead of placing on his account a certain sum as reserved for future costs, should ask for an order that all costs incurred, as well as the costs of the then proceeding, and those to be incurred thereafter, up to the date of final settlement, be taxed and paid by privilege from the fund stated in the account.

2. The receiver's commission being allowed at five per cent. of the fund to be distributed, a greater percentage than ten per cent. upon the same fund is refused the attorneys of the receiver. It is held, on the showing made, that on those accounts—receivers and attorneys—fifteen per cent. is all that should be allowed on a distributive amount of but little more than $9,000.

3. In insolvent estates, there must be taken into consideration, in estimating fees, the practical results achieved in the way of moneys realized for creditors, and care is always to be had not too greatly to deplete by charges the small store of funds constituting the common stock out of which all are to be paid.

4. A stockholder, who was also director, made advances of money which were used for the purpose of the corporation, to meet its debts and tide over its difficulties. *Held*—it being shown that this was done legitimately and in good faith—no fraud, no deception, no preference, no wrong-doing of any kind—his rank and standing as an ordinary creditor is the same as that of any other ordinary creditor.

APPEAL from the Civil District Court, Parish of Orleans—
*Ellis, J.*

*Gustave A. Breaux,* and *Fenner, Henderson & Fenner,* for Plaintiff, Appellee.

*Cage, Baldwin & Crabites,* for Opponent, Appellant.

The opinion of the court was delivered by

BLANCHARD, J. This is a contest over a receiver's account and tableau of distribution.

The only asset is the sum of $9,219.30.

On the debit side of the account appeared a list of seven claims allowed as *privileged,* aggregating $2,240.85. This left a balance for ordinary creditors of $6,978.45.

Then appears a list of ordinary debts, seven in number, aggregating $7,978.27, among whom, ratably, it is proposed to distribute the $6,978.45.

At the foot of the account appears the following:

C. H. Adams claims to be a large creditor of the company, but, inasmuch as this alleged indebtedness arose out of a transaction with the company at the time when the said Adams was a director and the acting manager of the company, accountant is advised that the said Adams is not entitled to participate as a creditor in the distribution of the assets of the company unless and until the other creditors have been paid, or at least until full and satisfactory proof of the amount, nature and *bona fides* of the debt alleged to be due to the said Adams has been made to the court.

Adams appeared and filed an opposition, averring he is a creditor of the defendant company as per judgment duly rendered in his favor by the Civil District Court of the Parish of Orleans for amounts aggregating, principal and interest, over $32,000.00.

He demanded to be included on the account as an ordinary creditor for said indebtedness, to take rank equally with the other ordinary creditors and share ratably with them in the amount left over after payment of the privileged debts.

He opposed every item on the privileged list as being either not due, or excessive in amount, and especially did he oppose the amount reserved for further costs $100.00, and the allowance of $1,250.00 to the attorneys of the receiver.

And he opposed all of the debts classed as "ordinary" on the receiver's account, save that due the Standard Cotton Seed Oil Company under a judgment it had recovered against defendant corporation.

The court a qua sustained his opposition to the item of $100.00 reserved for future costs, found among the privileged claims, and, in lieu, ordered that all costs incurred, as well as the costs of this proceeding and those to be incurred hereafter, up to date of final settlement, be taxed and paid by privilege from the fund stated on the account.

We approve this ruling.

His opposition as to the other items on the privileged list was rejected.

As to the six ordinary claims he objected to, his opposition was sustained as to five of them, leaving as due, of the ordinary debts placed on the account, the one to the Standard Cotton Seed Oil Company for $6,254.74 and the one to Gilmore & Baldwin for $419.80.

His opposition to the exclusion from the account of his own claim from the list of ordinary debtors was maintained and he was recognized as an ordinary creditor for $32,000.00, less $1,095.93 paid to him June 7, 1895, but it was decreed that he is not entitled to participate in the distribution of any funds borne on the account until all the privileged and ordinary creditors listed on the account as amended by the judgment, together with costs, be first fully paid.

As thus amended, the receiver's account was homologated and distribution ordered.

Adams appeals.

Among the privileged debts there is an allowance of $461.00 to the receiver as commissions. This is 5 per cent. upon the fund in hand for distribution and is not excessive and is not objected to.

It is objected, however, that $1,250.00 is, taken in connection with the receiver's commissions, too great a sum as attorneys fees where the net result of the services rendered is the realization of the sum of $9,219.30 only, as the fund to be distributed to creditors. It is pointed out that the attorneys fees claimed and the receiver's commissions aggregate $1,711.00—too great a charge upon a fund of but little more than $9,000.00.

It is urged that allowing the receiver 5 per cent. of the fund col-

lected for distribution, and his attorneys 10 per cent. upon the same fund, which is $461.00 to the receiver and $921.93 to the attorneys, or $1,382.93 in all, is quite sufficient, being 15 per cent. of the sum in hand for distribution.

We agree with this view. While the evidence shows that valuable services were rendered by eminent counsel, involving much labor and time, there must, in insolvent estates, be taken into consideration, in estimating fees, the practical results achieved in the way of moneys realized for creditors, and care is always to be had not too greatly to deplete by charges the small store of funds constituting the common stock out of which all are to be paid.

The first item on the list of ordinary debts allowed by the judgment is that relating to the claim of the Standard Cotton Seed Oil Company. The principal of the debt is stated to be............$4,042 14 and six years interest at 5 per cent...................... 1,212 60

Making a total, as per the account, of...................$6,254 74

But this total is erroneous—a wrong calculation. The figures foot up $5,254.74 and not $6,254.74.

The account and judgment thereon must be amended in this particular.

There is also an error in the judgment in stating the amount of the Adams' claim at $32,000.00. This is too much. The receiver properly allowed the ordinary debt of the Standard Cotton Seed Oil Company to bear 5 per cent. interest up to the filing of the account, May 21, 1900.

The judgment which Adams had recovered in the suit he had brought against the receiver fixed the interest on the several items going to make up his claim, and this interest should have been calculated, as was done in the case of the Standard Cotton Seed Oil Company, up to May 21, 1900, the day of the filing of the receiver's account. Figuring the claim on this basis, and allowing the credit, heretofore referred to, of $1,095.93, the total of the Adams claim is $31,775.14 and not $32,-000.00 as was allowed by the judgment herein.

The evidence establishes that this debt due Adams was for cash loaned the company in good faith for the purpose of carrying on its business and serving the best interests of all parties, creditors, stockholders and directors.

In the absence of fraud, or deception, or preference, or wrong doing of any kind, his rank and standing as an ordinary creditor is the same as that of any other ordinary creditor.

There is no charge of fraud or mismanagement. Indeed, the record discloses a disclaimer by counsel of the receiver of anything of this kind.

This being so, and the funds having been advanced by Adams legitimately and used for the purpose of the company, the law does not exclude him from participating *pro rata* with other ordinary creditors.

The authorities relied on by counsel for the receiver as establishing the reverse of this, do not do so. Some of them have no applicability; others go only to the extent of holding that stockh.lders, directors and officers of a corporation cannot make use of their positions to prefer their claims to those of other creditors, nor to take any unfair or inequitable advantage of them—a proposition of universal acceptance.

The case of County of Morgan vs. Allen, 103 U. S. 508, cited by counsel for receiver, has no bearing on the question here raised. The same is true of Belknap, Receiver, vs. Adams & Rice, 49 La. Ann. 1351, another of their cited cases.

In Brashear vs. Cooperage Co., 50 La. Ann. 587, another of their authorities, the court held that a director, claiming under a mortgage executed in his favor by the corporation, could not compete in the distribution of the proceeds of the mortgaged property with a creditor to whom, on the same day the mortgage note was delivered to the director, the board of directors authorized the mortgage (presumably on the same property) on which the creditor advanced his money to the corporation—a situation, or state of facts, so different from that here presented that the case is not an authority in point. In the case referred to there was deception, if not fraud, practiced upon the creditor.

In Cockran vs. Ocean Dry Dock Co., 30 La. Ann. 1365, also invoked by counsel for the receiver, the point decided was that the debts of the company must be satisfied before the salaries of the officers of the company, who were stockholders, could be paid—a proposition altogether sound and altogether dissimilar from the question here raised.

In Cahill vs. Slaughter House Co., 47 La. Ann. 1484, mainly relied on by the receiver's counsel, the contest was between directors, who were the holders of bonds secured by mortgage (having loaned the company the funds represented by the bonds), and creditors who claimed

*privileges* upon the proceeds of sale of the mortgaged property. The property had been sold in foreclosure of the mortgage. It did not bring enough to satisfy the mortgage resting upon it; much less that and the privileged debts combined. The privileges asserted by the competing creditors, *if they existed,* outranked the mortgage. The privileges *did* exist unless lost because of failure to seasonably register the same as against third persons. Right there was the crucial point of the case. To have effect against *third persons* claiming a mortgage, it was necessary to record the evidence of the privilege within a certain time. This had not been done and as to the mortgage creditors claiming the proceeds of the property sold, the privilege was lost *if they were third persons.* But being *directors* of the corporation the court properly held they could not be considered "third persons," and the privileges took effect as against them even though not seasonably recorded.

The inapplicability of that case as an authority in the instant case is patent.

On the other hand, the contention advanced on behalf of Adams, of his right to stand on a footing with the other ordinary creditors of this insolvent estate, is supported by authority of the greatest weight, as the following will show:—

A stockholder may lend money to a corporation and take a mortgage to secure the loan, and in the absence of fraud, he has the same rights under such contract as a stranger would have.

Clark & Marshall Private Corporations, Vol. 2, Sec. 534.

The strict rule that directors cannot enter into contracts with the corporation does not seem practicable. It would operate to disable those who have already embarked their funds in a corporate enterprise and given to it their personal attention, from assisting it in time of difficulty, except at the risk of doing so without security. A corporation might be in a sorry plight indeed, if one who had already embarked his funds in it, and who, from the fact of his being one of its managers, is best acquainted with its needs and difficulties, should not be able to make a present advance of money to it to help it out of those difficulties. That it is necessary for the law to throw around such transactions the strongest safeguards in order to prevent fraud, need not be argued. Nor should it be forgotten that the right of directors of an *insolvent corporation* to take security for *past advances,* thereby *preferring themselves* over other creditors, stands on quite a different footing. We, therefore, find the prevailing doctrine to be that the director of a corporation may advance money to it, may become its creditor, may take from it a mortgage or other security, and may enforce same like any other creditor, but always subject to severe scrutiny, and under the obligation of acting in the utmost good faith.

Thompson, Commentaries on the Law of Corporations, Vol. 3, p. 2968, Sec. 4068.

Directors of an insolvent corporation, who have claims against the company as creditors, must share ratably with the other creditors in a distribution of the company's assets. They cannot secure to themselves any advantage or preference over other creditors by using their powers as directors for that purpose. These powers are held by them in trust for all the creditors, and cannot be used for their own benefit.

It is to be observed, however, that a person who is a creditor of an insolvent corporation is not deprived of any of his rights as a credtior by the fact that he also occupies the position of director of the company. He is merely incapacitated, as director, from using any of the powers of his position for his own benefit or the benefit of his co-directors.

Morawitz on Private Corporations, Vol. 2, Sec. 787, p. 757.

After proceedings have been instituted to obtain a general distribution of the assets of an insolvent corporation among its creditors, the shareholders cannot, when sued for the amounts unpaid upon their shares, set off debts due to them by the corporation. Under these circumstances they must pay up their shares in full and are entitled only to a ratable distribution of all the company's assets, and to receive dividends upon their claims in common with other creditors.

Morawitz on Private Corporations, Vol. 2, Sec. 861, pp. 833 and 834.

Directors and other officers, however, who are also creditors, are, of course, not excluded, because officers, from sharing ratably with other creditors of their corporation.

Taylor on Private Corporations, Sec. 760. See also Secs. 729, 730 and 731. Beach on Private Corporations, Vol. 1, Sec. 245; 50 Conn. 597; 78 Va. 737.

It is not claimed that the debt of the appellant corporation to the appellee, as a stockholder and director, was invalid and void as between them, but that the appellee's claim against the company should not stand upon the same footing and share ratably with the claims of other creditors, who were not stockholders and directors of the corporation. We know of no legal reason for any such discrimination against the stockholder or director, who has become a *bona fide* creditor of his corporation for money loaned thereto in aid of its business. In this case the appellants do not question the good faith of the appellee's loan to the appellant corporation, nor its power to borrow the money in furherance of its business, nor was any fraud or improper dealing imputed either to the company or to the appellee; but upon the ground, solely, that he was a stockholder and director of the company, as alleged in the second paragraph of the answer, it is insisted that the appellee's claim should be postponed until all the creditors, who were not stockholders of the company, had been fully paid. We cannot approve of this position.

The Bristol Milling Company vs. Probasco, 64 Ind. Reps., p. 412.

See also Twin-Lick Oil Co. vs. Marbury, 91 U. S. 587; Sawyer vs. Hoag, 84 U. S. 610; Scovel vs. Thayer, 105 U. S. 152; Merrick vs. Peru Coal Co., 61 Ill. 472; 118 Mo. 264; 152 U. S. 473.

For the reasons assigned, it is ordered, adjudged and decreed that the account and tableau of distribution filed herein by the receiver be recast as follows:—

### ASSETS.

Proceeds of judgment against Chas. H. Adams in suit No.
47877, C. D. Ct., principal of judgment...............$7,500.00
Interest at 5 per cent. to May 4, 1900, four years and five
months ........................................ 1,656.25
One-half of costs incurred by receiver in suits Nos. 47877 and
47878, consolidated ................................. 63.05

Total assets ......................................$9,219.30

### PRIVILEGED DEBTS.

1. Costs of suits Nos. 47877 and 8..............$126.10
2. Costs of suit already incurred in this proceeding  15.00
3. Receiver's commission ...................... 461.00
4. G. A. Breaux and Fenner, Henderson & Fenner,
   attorneys for receiver ...................... 921.93
5. Standard Cotton Seed Oil Co. court cost in suit
   42462 .................................... 188.93    1,712.78

Balance for ordinary creditors........................$7,506.52

### ORDINARY DEBTS.

1. Standard Cotton Seed Oil Co., amount due
   under judgment in suit No. 42462—principal..$4,042.14
   Interest 6 years 5 per cent................. 1,212.60    5,254.75

2. Gilmore & Baldwin ................................. 419.80
3. Chas. H. Adams ................................. 31,775.14

Total ordinary debts .............................$37,449.69
to be paid *pro rata* from balance of $7,506.52.

And as thus amended it is approved and homologated and distribution ordered to be made accordingly.

82 . SUPREME COURT OF LOUISIANA,

Railway Co., Limited, vs. Construction Co. et als.

It is further ordered, etc., that the judgment appealed from be so amended as to conform to the account thus recast, and as thus amended the same be and is hereby affirmed, costs of this appeal to be paid out of the funds in the hands of the receiver.

Rehearing refused.