March 20th, 1905.

———o———

No. 3605.

(Court of Appeal, Parish of Orleans.)

## SUCCESSION OF ERNEST MARCHAND.

Appeal from Civil District Court, Division "A."

Merrick and Lewis, and R. A. Tichenor, for Plaintiff and Appellant.

W. O. Hart, Attorney for B. R. Forman, Appellee.

1. Where it is not established that the debtor has been judicially notified of the title or claim which is the foundation of the demand for the whole of the property or debt, so as to acquire a sufficient knowledge of the rights sought to be enforced against him, no legal interruption of prescription results in favor of him to whom such rights belong.

2. So where in a rule to subject to a lessor's lien funds arising from the sale of property adjudicated at a Sheriff's offering under a writ of *fieri facias,* issued in the suit of a person other than the lessor, no judgment is prayed for by the lessor against the lessee for the rent

alleged to be due, and no copy of the rule is served upon the latter, the only service made being that of the decretal portion of the rule no legal interruption of prescription of the claim for rent results.

MOORE, J.  A. Storrs, Bennett & Co. and B. R. Forman were judgment creditors of John DeBois, Paul A. Marchand and the Widow and Heirs of Earnest Marchand; the former for the sum of $713.75 with 5 per cent. per annum interest thereon from October 31, 1891, and the latter for $700.00 with legal interest thereon from judicial demand.  In execution of their judgments, concurrent writs of *fieri facias* were issued, and thereunder there was seized and subsequently sold, certain movable property found in the premises No. 110 Chartres street in the City of New Orleans.  The gross proceeds of the sale amounted to $1,309.75, Forman being the adjudicatee of the major portion of the property thus sold.  As a seizing creditor and as the attorney of record of the other judgment creditors, A. Storrs, Bennett & Co., Forman retained in his hands the net proceeds of sale, $1145.60, to be applied, *pro rata*, to the satisfaction of his judgment and that of his clients.

Fifteen days after the Sheriff's sale, and after all the property sold had been removed from the premises, Widow John Gauche filed her rule, wherein she averred that P. E. Marchand, Mrs. Georgiana Merveaux, widow of the late Ernest Marchand, individually and as natural tutrix of her minor children, and Ernest Machand, Jr., are indebted *in solido* to her in the sum of $720.00, "for rent of premises No. 110 Charters street for 16 months from March 1st, 1892, to date (July 26, 1893), at $45.00 per month, and for rent at said rate until possession of said property is delivered to her, with legal interest from the various dates of her judicial demands heretofore made in the succession of Marchand, ten per cent attorney's fees, all costs of suits Nos. 22144 and 22103 of the First City Court for this Parish, in which she obtained judgment for rents of said premises for the months of March,

April, May and June, 1892;" that she has a lien and pledge on all the movable property contained in said premises; that said movable property has been sold under *fi fa* issued upon judgments rendered in favor of B. R. Forman and A. Storrs, Bennett & Co.; that said Forman became the adjudicatee of the major part, if not all, of said movable property, and now owes the Sheriff the price thereof; and that she is entitled to have sufficient amount of the price of said movable property paid by said Forman into the hands of the Sheriff, or into her hands, to satisfy rent due her with interest, etc.; whereupon she prayed that B. R. Forman, Paul A. Marchand, Mrs. Georgiana Merveaux, widow of Ernest Marchand, individually and as tutrix of her minor children, and Ernest Marchand, Jr., be cited to show cause "why he (sic) should not pay into the hands of the Sheriff, or into mover's hands, a sufficient amount of the price of the movable property contained in No. 110 Chartres St., adjudicated to him (sic) to satisfy mover's claim for rent with interest, attorney's fees and costs." Order to that effect was made and the 1st day of August, 1893, fixed as the return day.

This rule was sued out pursuant to the following agreement entered into on the day following the sale; the only parties thereto being Mrs. John Gauche and B. R. Forman individually:

"No. 31,906.

"Civil District Court, Division ....

"SUCCESSION OF ERNEST MARCHAND.

*"On Rule of Mrs. Widow John Gauche.*

"It is hereby agreed and understood between undersigned counsel, that this rule is to be regarded the same as a direct action, coupled with a provisional seizure issued the day following the sale of property seized under execution by defendant in rule, Mr. B. R. Forman, and before the removal of any of the said property from the premises, No. 110 Chartres street, and that the

263

mover shall have the right to assert any and all rights and privileges upon the trial of this rule that she would have had in a proceeding by provisional seizure or in any other proceeding taken on said date, not waiving any legal right or the question whether or not the lessor had not lost her lien and privilege by reason of the Sheriff's sale, the understanding being that the lessor shall have by rule any remedy to which she would at that date have been entitled.

    (Signed.)             "GILMORE & BALDWIN,

                              "*Attorneys for Mrs. Gauche,*

                    "B. R. FORMAN."

To this rule, Forman interposed the prescription of three, five and ten years, among several exceptions, which latter we need not notice, as, in our opinion, the plea of prescription, which was sustained by the trial judge, resolves the case against the appellant.

The plea of prescription of ten years is leveled at the two City Court judgments referred to in the rule, but as no such judgments were produced, offered or filed in the cause no notice may be taken of the plea so far as this term of prescription is concerned.

The term of prescription applicable to the claim for rent, which is represented to be due but not sent to judgment, is three years. The rent is alleged to have been by the month, beginning on the 1st day of March, 1892, and it is claimed for sixteen months, thus ending on the 1st of June, 1893. The current of prescription began to run from the maturity of each monthly rent; and as more than three years have elapsed since then all the rent claimed is prescribed unless the course of prescription has been stayed.

It is contended by the plaintiff in rule that prescription has been interrupted, firstly, by the pledge of the property which the law accords the lessor as security for his rent; and, secondly, by

the institution of the present action by rule and its service thereof on the lessees.

The pledge which the lessor had on the property found in the leased property, undoubtedly interrupted prescription on her claim for rent, but that interruption ceased when the property was removed from the leased premises.

The sale took place on the 11th of July, 1893. Some of the property sold was removed on the same day, and within several days thereafter all the property adjudicated had been taken out and carried away. Up to this latter period, say up to about the 15th of July, 1893, prescription was interrupted by the pledge, but from this date prescription began to run anew. Three years thereafter would bring the prescription period up to the 15th of July, 1896. Many years have elapsed since then; enough to prescribe the claim thrice over, unless the asserted legal interruption can be maintained. In our opinion it cannot.

Pretermitting the fact that the rule does not give the slightest intimation of a lease from Mrs. Gauche to any of the parties named in the rule, or recite any state of facts from which may be implied that the relation of lessor and lessee exists between her and any named person or persons so as thus to give rise to the landlord's lien and privilege (14 A. 169; 19 A. 101; 11 R. 280; 7 A. 654; 7 A. 22), it will be perceived that the rule recites so far as concerns the persons alleged to be indebted for rent, simply, that the Marchands are indebted unto mover in the sum of $720.00 for rent of the premises named, but there is no "demand" on them for the amount stated to be due, no judgment of any kind or character being prayed for against them. What is the object of the rule; what is the cause of action disclosed, so far as the Marchands are concerned?

In no sense can it be considered as a suit against them as lessees of any property and for the recovery of any rent due or for the enforcement of any lien and privilege on any property

growing out of any contract of lease. No judgment of any kind, character or nature could be rendered against them, and the proceeding was as important to interrupt prescription on mover's claim for rent against the Marchands as it would be to interrupt prescription on any conceivable character of claim which might be asserted against them.

Not alone does the rule not assert any cause of action against the Marchands, nor seek any judgment against them, but it was not even served upon them. The only service made on them was of the order of Court, and to this effect:

"On motion of Gilmore & Baldwin, of counsel for Mrs. Widow John Gauche, and for the reasons on file—

"It is ordered that B. R. Forman, Paul A. Marchand, Mrs. Georgiana Marchand, widow of Ernest Marchand, individually and as tutrix of her minor children, and Ernest Marchand, Jr., show cause, on the 1st day of August, 1893, why he should not pay into the hands of the Sheriff or into mover's hands a sufficient amount of the price of the movable property contained in No. 110 Chartres St., adjudicated to him, to satisfy mover's claim for rent, with interest, costs and attorney's fees."

This is not the "citation" which the law contemplates shall serve as the basis for a legal interruption of prescription.

As said in Flower, et. al., vs. O'Connor, 17 La. 214, "in order to determine the effect and extent of a legal interruption, we must inquire, according to Pothier, *loco citato,* more particularly into the object and cause of action, than into the right of the plaintiff, the manner in which it is prosecuted and the competency of the Court in which it is instituted; and endeavor to ascertain how far the knowledge of the titles on which the action is founded, has been brought home to the defendant by the judicial demand; and we do not hesitate to conclude that, if it be established that the defendant has been judicially notified of the titles which are the foundation of the demand for the whole of the property or of the

debt, so as to acquire a sufficient knowledge to the rights which are sought to be enforced against him by a suit, there results from said suit a legal interruption in favor of those to whom such rights may belong. This seems also to be the true spirit of our law on the subject, as from the expressions of Art. 3484 of the Louisiana Code, to-wit, 'a legal interruption takes place, when the possessor has been cited to appear before a court of justice, on account either of the property or of the possession,' the law appears to contemplate that the object and cause of the action, ought to be the principal criterious which should be resorted to for the purpose of ascertaining the fact and the extent of the interruption resulting from a judicial demand." (See also 33 An. 846; 36 An. 847.)

In the instant suit it is clear that the Marchands have never been "judicially notified of the titles which are the foundation of the demand, so as to acquire a sufficient knowledge of the rights which are sought to be enforced against them," if indeed any rights at all are sought to be enforced, hence there did not result from the said rule a legal interruption in favor of the mover therein.

The plea of prescription was therefore properly maintained, and the judgment appealed from is affirmed.

March 20th, 1905.

## ON APPLICATION FOR REHEARING.

### Dissenting Opinion.

1. A lessor's privilege is a privilege of with the right of retention of the property pledged, and, when the creditor is in possession, prescription is suspended.

2. It is the possession which suspends the prescription, and this without regard as to whether the pledge is statutory or conventional.

3. The written agreement on file, which is the law of the case as between the subscribers thereto, brings this strictly within the scope.

DUFOUR, J. The argument of counsel on the rule of Mrs.

Widow John Gauche is to the effect that the rule is to be regarded the same as a direct action coupled with a provisional seizure issued the day following the sale of the property on the leased premises, and before the removal of any property sold under execution of Forman's judgment, and that the mover shall have the rights as if she had proceeded against the property as lessor on that day.

It is shown that property sufficient in value to pay mover's claim was on the premises on the day of the agreement which was the day after the sale.

Such property was therefore subject to the landlord's lien, and, in contemplation of law, as well as by the terms of agreement still is, unless prescription has intervened in the meantime.

Jurisprudence does not, in a case of this nature, recognize prescription.

In Villere vs. Succession of Shaw, 108 La. 74, the Supreme Court in affirming a judgment of this court said:

-- 'As relates to the right of retention, we have not found that there is any material difference, when the statutory pledgee, as in this case, remains in possession. A pledge is a privilege with the right of retention of the property pledged. This is precisely the lessor's right * * * *, when the creditor is in possession, prescription is suspended. It is the possession which suspends the prescription, and this without regard whether the pledge is statutory or conventional. * * * *.

"We have dwelt more particularly on the possession, because in our view it must follow, if the lessor continued in possession, the claim for which the property was held was not prescribed."

In the Succession of Darton, 37 S. R., 861-2, the Supreme Court, in a kindred matter, said:

"The contract of the parties is the law of the case. That con-

268

tract was that the agreement should be continued in full force, until the note was paid and it is conceded that the note has never been paid. Besides, the agreement stood in the hands of Darton as a security or sort of pledge for the payment of the note, and as such operated a constant interruption of the prescription."

I think Mrs. Gauche, the mover, is entitled to recover with privilege, and therefore, with all due difference to my colleagues, dissent from their decree refusing a rehearing.

June 26th, 1905.