Case 82.—ACTIONS BY C. R. SHRADER AND ANOTHER, AND
BY THE KENTUCKY TITLE CO., AGAINST W. J. SEM-
ONIN, CLERK OF JEFFERSON COUNTY COURT FOR A
MANDAMUS TO COMPEL HIM TO RECORD CERTAIN
DEEDS.—Oct. 23.

## Shrader, &c v. Semonin, County Clerk.

Appeal from Jefferson Circuit Court (Common
Pleas Branch, 1st Division.)

EMMET FIELD, Judge.

Judgment for Defendant. Plaintiffs appeal. Af-
firmed.

1. Statutes—Subject and Title—Validity—Act March 15, 1906,
   entitled  "An act relating to revenue and taxation," is not
   violative of Const. Sec. 51, providing that no act shall re-
   late to more than one subject, which shall be expressed in the
   title, by reason of its provisions in article 2, Sec. 10, that
   no mortgage or other instrument constituting a lien or other
   security for any evidence of indebtedness shall be received
   by any county clerk for record unless it contains the post-
   office address of the person or corporation owning the evi-
   dence of indebtedness, nor by reason of the provision that,
   unless any assignment of security for indebtedness is of record,
   the original holder shall be liable for taxes.
2. Eminent   Domain—Constitutional   Provisions—Taxation—As-
   signment of credits—Act March 15, 1906, art. 2, sec. 10, pro-
   viding that where an assignment of any instrument consti-
   tuting a lien or security for a note or other evidence of indebt-
   edness is not of record, the original holder shall be liable as
   though no assignment had been made, is not unconstitutional,
   as a taking of private property without just compensation.

THOMAS W. BULLITT and WILLIAM MARSHALL BULLITT
for appellants.

### RECAPITULATION.

#### I.

1. The Ky. Title Co. received bonds, payable to bearer, se-
   cured by mortgage—6 bonds of $200 each—$1,200.
2. In July, 1906, for value received, it transferred those
   bonds, by delivery, as follows:

To the Pres. Theological Seminary, 4 bonds of $200
  each _____$ 800
    To Mrs. Sutherland, of Washington, D. C., one bond__ 200
    To Mrs. Sloss, of California, one bond_____ 200

                                                    $1,200

3. The Seminary is an educational institution exempt from taxation.
   The other transferees are non-residents of Kentucky and are not subject to taxation here on their personal estate.

4. Although the Kentucky Title Co., by the transfer made in July, 1906, ceased to have any interest in said bonds and although the bonds are not taxable in the hands of the several transferees, yet because the transfer was made by "delivery" only and not by "assignment of record" the recent revenue act (Sec. 10 of Art. 11) declares that the Ky. Title Co. shall be "liable for the taxes as though no assignment had been made"—that is, for the taxes to be assessed as of September 1, 1906, and for all future years.

5. The effect is that the Ky. Title Co. is required to pay taxes on property of which it has neither ownership nor possession; and to pay taxes on property which, in the hands of its true owners, is not subject to taxation.

6. The statutory provision accomplishing this result is void because in conflict with the Constitution of Kentucky.
   It conflicts with sec. 171, which requires taxation to be uniform; with sec. 13, which forbids private property to be taken for public (and a fortiori for private) use without compensation; with sec. 1, which secures to every citizen the inalienable "right of acquiring and protecting property," with the fundamental principal that private property must not be taken from him "without due process of law."

7. The response of appellees is, in effect, that the Revenue Act forbids the transfer of promissory lien notes or bonds by delivery or otherwise than by assignment of record.

8. Therefore that the imposition of the tax is defensible on one of two grounds, viz:
  (a) That it is imposed as a penalty for a violation of law in transferring bonds by delivery; or
  (b) That a transfer by delivery, being an violation of law, title to bonds so transferred does not pass to the transferee. It remains in the original holder who is therefore rightly subject to taxation thereon.

We respond:

9. The Revenue Act does not forbid the transfer of such bonds by delivery. There is no such declaration. It permits the transfer of title by delivery. Therefore

10. The Act, in effect, either imposes the tax upon the one who has lawfully ceased to own the property; or imposes a penalty for the doing of a perfectly lawful act.

We respond further:

11. The recent Revenue Act, if construed to prohibit the transfer of notes and bonds secured by recorded liens, is in conflict with sec. 51 of the Constitution. It embraces a "subject" not embraced by the title "Revenue and Taxation."

## II.

1. Shrader executed and delivered to Spurrier a deed of conveyance which secured certain purchase money notes.

2. This deed being presented to the County Clerk for record he refused to receive or record it, because it does not on its face give the "residence and post-office address" of the owner of the bonds.

3. His refusal is based on the prohibition in the Revenue Act of 1906.

4. It is insisted for appellants that the prohibition is unconstitutional and void. It conflicts with sec. 51 of the Constitution of Kentucky.

Under the title "revenue and taxation" there is an amendment of the statutes regulating "conveyances."

The judgment in each case should be reversed; the mandamus prayed for by Shrader and the injunction sought by the Ky. Title Co. should be granted.

R. W. BINGHAM, County Attorney, for appellee.

It will be observed that sec. 10 of the New Revenue Act except banks and trust companies with reference to purchase money notes, mortgage notes, and other liens for money due, which is an apparent discrimination in favor of this class of corporations but the discrimination is merely on the surface, for subdivision 2 of the same Act provides a method for the taxation of all property owned by banks or trust companies, including the class of property referred to in sec. 10, and, unless such property were excepted in section 10, there would necessarily result in discrimination against banks and trust companies which would invalidate either subdivision 2 or that part of section 10.

## CONCLUSION.

It is evident, then, that nothing can be made of an argument based on any discrimination in favor of banks or trust companies. It appears equally evident that the act complained of contemplates no taking of the citizen's property for public purposes in violation of any constitutional right.

It seems equally evident, not only from the facts in the case at bar, but from the course of judicial decisions, that section 10 is not invalid with reference to section 51 of the Constitution of this Commonwealth, and that the presence of this section as a part of the Act relating to Revenue and Taxation is not only not in opposition to section 51 of the Constitution, but that it is in the only place where such a section could legally have been placed.

### MEMORANDUM OF AUTHORITIES.

(Sec. 10, Art. 2, Chap. 22, Acts of 1906; Wulftange v. McCollom, 83 Ky. 361; Pennington v. Woofolk, 79 Ky. 13; L. & O. T. R. R. Co. v. Ballard, 2nd. Met. 165; Grundy v. Com., 12th Bush, 350; Com. v. Godshaw, 92 Ky. 435, Ky. Statutes, sec. 4223; Bohon's Assignee v. Brown, 101 Ky. 354; Nunn v. Citizens Bank, 107 Ky. 262; Rumbley v. Hall, 107 Ky. 349; Hays v. Com., 107 Ky. 655).

OPINION BY CHIEF JUSTICE HOBSON.—Affirming.

Section 10, art. 2, of an act entitled, "An act relating to revenue and taxation," approved March 15, 1906, reads as follows: "Each county clerk shall, on or before the first day of September of each year, make and certify to the various county assessors, as hereinafter provided, complete statements of all purchase money notes, mortgage notes, and other obligations for money due or to be paid, except purchase money notes, mortgage notes and other liens for money due or to be paid, owned by banks, or trust companies, as shown by the conveyances, mortgages and liens in his office. Said statements shall distinctly show the dates of execution and maturity of such notes or other evidences of indebtedness; the consideration therefor; the date of filing or recording same; the amount thereof, and the county of the residence

Shrader, &c v. Semonin, County Clerk.

of the owner, payee, beneficial holder thereof, or other person or corporation, liable for taxes thereon. Said statement shall be made to each county assessor of the State of such notes or other evidences of indebtedness as may be owned or held by persons or corporations residing or having their principal place of business in the county of such assessor. No mortgage, conveyance or other instrument or writing constituting a lien or other security for any note or other evidence of indebtness shall be received for record by any county clerk of this commonwealth unless such mortgage, conveyance or other writing give the county and state of the residence and post office address of the person or corporation owning or holding said note or other evidence of indebtedness, or liable for the payment of taxes thereon. Should there be an assignment of such note or other evidence of indebtednesse of record in the clerk's office, the assignment shall state the county and state of the residence and postoffice address of the assignee; unless any assignment is made of record, the original holder or owner shall be liable for taxes as though no assignment had been made. Any person who shall knowingly and intentionally give a  false or fictitious address or name in any such instrument or assignment as above mentioned shall be guilty of a misdemeanor, and shall upon conviction be fined not less than ten dollars nor more than one thousand dollars."

Section 11 of the same article provides: "The assessor upon receiving from the county clerk the statement of all purchase money notes, mortgages, notes, and liens, as provided in section 10 of this article, shall fix the value upon each and all of said notes and liens, estimated at the price each would bring at a fair voluntary sale, and enter the same in his tax book against the owner or beneficial holder thereof as it is provided in section 6 of article 1, that the property assesed shall be entered; and he shall return

said statement to the county clerk for the use of the board of supervisors.''

The first of these appeals arises in this way: On July 12, 1906, George E. Spurrier made a deed to C. R. Shrader for a tract of land in Louisville, Shrader executing to Spurrier as trustee his six promissory notes, with interest coupons attached, payable one and two years after date; three of the notes being for $200 each, and three for $500 each. A lien was retained in the deed to secure the payment of the notes, but the deed did not give the residence or postoffice address of George E. Spurrier, or of any person as the holder or owner of the notes. The deed was presented to W. J. Semonin, clerk of the Jefferson county court, duly executed and acknowledged, with the request that he should record it; the recording fees being tendered at the time. Semonin refused to receive the deed for record because it failed to comply with the statute above quoted in that it did not give the county and state of the residence or the post office address of the person owning or holding the notes referred to. Thereupon Shrader, as grantee, and Spurrier, trustee, as lien holder brought this action for a mandamus to compel the clerk to record the deed. The clerk filed a general demurrer to the petition; the court sustained the demurrer, and the plaintiffs appeal.

The second appeal is based on these facts: On June 15, 1906, the Kentucky Title Company loaned to Mark A. and Katie Suter $1,200, for which they executed six promissory notes, with interest coupons attached, payable in 6, 12, 18, 24, 30, and 36 months. The notes were each for $200, and were payable to the Kentucky Title Company or bearer. They were negotiable paper under the statute regulating negotiable instruments, and were transferable by delivery alone without indorsement or other assignment in writing. To secure the payment of the notes and

coupons, Mark A. and Katie Suter executed to the
title company a mortgage on real estate in Louisville.
The mortgage was duly recorded, and, thereupon,
the title company negotiated and transferred four of
the notes to the Presbyterian Theological Seminary
of Kentucky; one of them to Mrs. Mary Sullivan,
and the other to Mrs. Mary W. Sloss.   The notes
were actually delivered to the transferees, but there
was no assignment of record made.   The Theological
Seminary is an institution whose income is devoted
solely to the cause of education, and the notes pur-
chased by it are in its hands exempt from taxation.
Mrs. Sullivan is a resident of Washington, D. C., and
Mrs. Sloss of San Francisco, Cal.   By the terms of
the statute, it is made the duty of the county clerk to
report the notes to the assessor of Jefferson county
as the property of the Kentucky Title Company and
it is the duty of the assessor to assess them as its
property for taxation; it is also the duty of the
proper officers to collect from the title company the
taxes upon the assessment.   The title company
brought suit to enjoin the clerk and assessor from
discharging their duty, as required by the statute, on
the ground that the threatened action on their part
will inflict great and irreparable injury on the title
company, and that the statute, in so far as it requires
the notes and coupons to be assessed as the prop-
erty of the title company, is in conflict with the Con-
stitution.   The court sustained a demurrer to the
petition, and the title company appeals.

It will be perceived that in the first case the ques-
tion is made as to the validity of so much of the stat-
ute as forbids the recording of a conveyance, mort-
gage, or other like instrument securing a lien for
indebtedness, unless it give the county and state
of the residence and the post office address of the per-
son holding the notes or other evidence of such in-
debtedness.   It will also be perceived that in the sec-

ond case the validity of so much of the statute is assailed as makes the original holder liable for the taxes on such notes or evidence of indebtedness, unless the assignment is made a matter of record, It is earnestly insisted that these provisions are not germane to the title of the act, and that they are void under section 51 of the Constitution, which provides that no act shall relate to more than one subject, and that this shall be expressed in the title. We are unable to see the force of this objection. It is apparrent on the face of the act that both the provisions referred to are inserted to secure the collection of the taxes due upon this class of property. It is a matter of common knowledge that a large part of the money of the State escapes taxation, thus throwing a greater burden upon the visible property which the assessor can see and may not be easily concealed. If the record is required to show who owns the indebtedness which is secured by recorded instruments, and if the county clerk reports to the assessor all such indebtedness as shown by his record, manifestly a large part of the property which has been escaping taxes will be brought upon the assessment rolls. The general purpose of the constitutional provision is accomplished when a law has but one general object, which is fairly indicated by its title. To require every end and means proper for the accomplishment of its general object to be made the subject of a separate act, or to be set out in the title, would render legislation impracticable. So the courts have uniformly held that provisions which are fairly germane to the subject of the act may be inserted in an act having a general title like that before us. Pennington v. Woolfolk, 79 Ky. 14, rests upon the ground that the act was not restricted to matters germane to the title; but that, on the contrary, the title was calculated to conceal from the members of the General Assembly the real subject of the act. Wulftange v. McCollom,

83 Ky. 361, 7 Ky. L. R. 334, rests upon the same prin-
ciple.  In that case the title of the act related to the
charter of the city of Covington, and under this title
provisions were inserted which had no referrence to
municipal affairs, but radically changed the general
laws of the state.  The other cases relied on for ap-
pellants are similar to those referred to, and need not
be at length distinguished.

On the other hand, the following cases sustain the
validity of the act:  Grundy v. Commonwealth, 12
Bush 350; Commonwealth v. Godshaw, 92 Ky. 435,
13 Ky. L. R. 572, 17 S. W. 737; Nunn v. Citizens' Bank,
107 Ky. 262, 21 Ky. L. R. 961, 53 S. W. 665; Rumbley
v. Hall, 107 Ky. 349, 54 S. W. 4, 21 Ky. L. R. 1071;
Weber v. Commonwealth, 72 S. W. 30, 24 Ky. L. R.
1726; Hyser v. Commonwealth, 116 Ky. 414, 76 S. W.
174, 25 Ky. L. R. 608; Commonwealth v. Reinecke
Coal Mining Company, 117 Ky. 885, 25 Ky. L. R. 2027,
79 S. W. 287; Johnson v. Fulton, 89 S. W. 672, 28
Ky. Law Rep. 569.  In Henderson Bridge Company
v. Alves, 121 Ky.——, 90 S. W. 995, 28 Ky. Law Rep.
994, the court said:  "In levying a tax on peddlers
and providing for a license to be taken out by them,
the Legislature may properly provide regulations as
to how the business done under the license shall be
conducted.  This is germane to the general subject
of the act.  The case of Rumbley v. Hall, 107 Ky.
349, 21 Ky. L. R. 1071, 54 S. W. 4, and Jacobs'
Adm'r v. L. & N. R. R. Co., 10 Bush, 263, are
based on the ground that there was a natural con-
nection between all parts of the act."  Here the
provisions of the act in question are germane to the
subject of revenue and taxation embraced in the title.
In regulating how property shall be assessed for tax-
ation, and by whom the taxes shall be payable the
Legislature may, in a general act, provide safeguards
to prevent property escaping assessment and taxa-
tion.  It is insisted that the statute is void in so far

as it requires the holder of record to pay the taxes on the notes, when, in fact, he has assigned them before the time for assessment. It is urged that this is taking private property for public use without just compensation, especially where the property in the hands of its true owner is not subject to taxation. But the assignor may relieve himself of this liability by making a record of the assignment. He is only made liable for the tax when he fails to put upon the record the name of the owner of the property so that it may be assessed to him, if assessable. We do not see that there is any reason why the Legislature may not direct property to be assessed in the name of the owner of record. Any one may avoid liability under the statute by having the record show the real owner. It is immaterial that the notes might have passed by delivery without an assignment. They only so passed by virtue of the statute. The Legislature had a right to require the former owner to pay the taxes unless he complied with the statute, and made the record show the truth. The act does not affect the title to the notes, and therefore is not in conflict with the negotiable instrument act. It only imposes a liability for taxes. Similar provisions have long existed in the state and elsewhere. To illustrate: It has long been provided by statute that the holder of the legal title, the holder of the equitable title, and the claimant or bailee in possession of property are each liable for the taxes thereon; and that the owner or proprietor of a bonded warehouse is liable for the distilled spirits stored therein with interest though they have been removed from the warehouse. The banks are required to pay taxes on the value of their shares in the hands of the stockholders. A number of like illustrations might be given. It may be true that there will be some hardship in the administration of the act, but this is a subject that must be addressed to the Legislature, and

not to the courts. The Legislature, having the evil to be remedied in mind, has the discretion to adapt the remedy to the evil, and, so long as it keeps within its constitutional powers, it cannot be controlled by the courts.

Judgment affirmed.