## Fryer v. Wiedemann, et al.

(Decided May 16, 1912.)

### Appeal from Campbell Circuit Court.

1. Corporations—Preferred Stock—Condition of Issue.—Where preferred stock is issued under a stipulation in the certificate that "no mortgage or lien of any nature" shall be placed upon the property of the company without the unanimous consent of the preferred stockholders, the words "mortgage or lien of any nature" do not include claims of general creditors.

2. Corporations—Director—Loan to Corporation.—Though a director may not take advantage of his position to obtain a preference over other creditors, he may in good faith make a loan to the corporation, and may share in the distribution of its assets upon the same terms as the other unsecured creditors.

3. Corporations—Preferred Stock—Violation of Contract of Issue.—Where the preferred stock of a corporation is issued upon condition that it shall have priority over the common stock in the distribution of the assets and upon the further condition that no mortgage or lien of any nature shall be placed upon the property of the company without the unanimous consent of the preferred stockholders, the contract of issue is not violated by one of the directors, who is a common stockholder, and another common

stockholder, loaning money to the corporation, and incurring an indebtedness which, together with the other indebtedness of the corporation, exceeds the amount both of the common and preferred stock, where such loans are made in good faith, and in a bona fide effort to keep the corporation a going concern, and to make it a success.

AUBREY BARBOUR, FRED B. BASSMAN for appellant.

DOLLE, TAYLOR & O'DONNELL and RAMSEY WASHINGTON for appellee Wiedemann.

JAMES C. WRIGHT for appellee Crawford.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

The Highland Hotel Company was a corporation organized for the purpose of conducting a hotel in the District of Highlands, Campbell county, Kentucky. Its original capital stock was $50,000, divided into 500 shares of $100 each. In July, 1905, its capital stock was increased from $50,000 to $80,000, the additional $30,000 being preferred stock, divided into 300 shares of $100 each. The certificates of preferred stock contained the following provision:

"The holders of this preferred stock are entitled to receive cumulative dividends at the rate of not over six per cent (6 per cent) per annum, out of the profits of the company, payable quarterly on the first day of January, April, July and October of each year, and to have preference over the common stockholders both as to assets of the company in the event of the distribution thereof by reason of dissolution, or otherwise, and as to dividends, and to have priority in these respects over the holders of any other issue of stock. No mortgages or lien of any nature shall be placed upon the property of the company without the unanimous consent of the preferred stockholders; otherwise said preferred stock shall have no voting power. The company may at any time, cumulative dividends at the rate of six per cent (6 per cent) per annum having been paid thereon, retire any of the shares of the preferred stock at the rate of one hundred and ten dollars per share."

In August, 1906, the corporation was authorized to increase its common stock from $50,000 to $80,000, the additional $30,000 of common stock to be divided into

.300 shares of $100 each. Only 10 of these additional shares were ever issued.

The highest indebtedness authorized by the orginal articles of incorporation was $30,000. In July, 1907, the limit of indebtedness was, by amended articles of incorporation, increased to $100,000. By another amendment, in August, 1908, the limit was increased to $125,000.

On January 22, 1909, Charles Wiedemann, one of the appellees, filed an action in the Campbell Circuit Court against the hotel company for the appointment of a receiver, on the ground that it was impossible to conduct the company with profit, and that it was hopelessly insolvent. A receiver was appointed, and the cause referred to the master commissioner to hear proof and report on claims. Claims of appellees Wiedemann and Crawford were allowed.

Appellant, Robert N. Fryer, the holder of ten shares of the preferred stock, intervened in the action. He alleged that at the time of the issue of the $30,000 preferred stock, the assets of the company were amply sufficient to pay all of its outstanding indebtedness, including the preferred stock; that a large portion of Wiedemann's indebtedness was incurred by the company after the issue of the preferred stock, and without the consent of the preferred stockholders; that the assets of the company were insufficient to pay its indebtedness, not by reason of any destruction or depreciation of the property, but by reason of its excessive indebtedness; that $30,000 was the limit of indebtedness permitted by the articles of incorporation to be incurred by said company. It was further alleged that Wiedemann had been a large stockholder in the company since its organization. At the time of the creation of the indebtedness to himself, he was the owner of a large majority of the common stock, and was also a director. The intervening petitioner asked that he be allowed to prosecute the cause set up in his intervening petition on behalf of the preferred stockholders, and prayed for a decree adjudging that the preferred stockholders have priority in the distribution of the assets of the company over the claims of Wiedemann and all creditors, whose indebtedness was incurred subsequent to the issue of the preferred stock. To this petition a demurrer was sustained.

By amended petition, it was alleged that at the time of the organization of the Highland Hotel Company, appellees Wiedemann and Crawford subscribed for and became the owners of 75 and 20 shares, respectively, of the common stock; that on or about February 1, 1907, Wiedemann became the owner of 320 shares, and Crawford of 150 shares, of the 510 shares of common stock; that one Clarence Wagner was the owner of five shares, and one Robert Nagel the owner of five shares; that about that time, Wiedemann, Wagner and Nagel were elected directors, and Wiedemann was elected president; that said persons contiuously served and acted in said capacity up to the time of the institution of the action for the appointment of a receiver; "that during all of said time, the said Clarence Wagner was only a nominal director in said company, and acted as such in the interest of said Wiedemann, and that said Robert Nagel was only a nominal director, and acted in all respects as such in the interest of said L. J. Crawford." It was further alleged in the amended petition that at the time Wiedemann and Crawford acquired control of the company, its total indebtedness, including mortgage indebtedness of $8,000, incurred prior to the issue of the preferred stock, was only $28,-000; that at the time of the institution of the suit by Wiedemann, the indebtedness of the company aggregated $104,882.62, exclusive of the $8,000 mortgage claim, and exclusive of mortgage claims aggregating $22,000, against the property known as The Shelly-Arms; that of said aggregate indebtedness, the sum of $56,909.03 was the indebtedness of Wiedemann, and $20,540 the indebtedness to Crawford, leaving a balance of $27,335.50 as indebtedness to other unsecured creditors; that of this balance, $15,000 was to a bank and for which Wiedemann and Crawford were sureties. It is further alleged in the petition that of the money advanced by Wiedemann and Crawford, $30,000 was used in making changes and additions to the Altamont Hotel, and the remainder was used in paying the operating expenses of the hotel. That all the property of the Highland Hotel Company was appraised at $107,814; that the proceeds of the sale aggregated $77,-450; that one L. C. Widreg, as representative of Wiedemann and Crawford, became the purchaser at that price. It is also alleged that at the time Wiedemann and Craw-

ford purchased control of the property, the company could obtain no further credit, and was about to be forced into dissolution; that if it had been dissolved at that time, the property could have been sold for a sum sufficient to pay the preferred stockholders in full; that for some time thereafter the assets of the corporation would have paid its current indebtedness, and the preferred stockholders, in full; that Wiedemann and Crawford had advanced the money when no credit could be obtained from anyone else; that if the claims of Wiedeman and Crawford are permitted to have priority over the claims of the preferred stockholders, it would be a payment to them to the extent of $30,000 out of the property of the preferred stockholders; that the advancements made by Weidemann and Crawford were made when the company was operating at a loss of $1,-000 a month; that the company operated at a loss during all of said time except during the months of June, July, August and September, 1908, when there was a profit; that if Wiedemann and Crawford are permitted to have priority over the preferred stockholders, this would be in violation of the contract under which the preferred stock was issued, and would be in violation of the relation of trust which Wiedemann occupied towards the preferred stockholders as the president and director of the company, and which Crawford occupied towards them as a stockholder and a virtual director, acting through Robert Nagel. The amended petition then concludes with a prayer to the effect that the preferred stock be given priority over the claims of Wiedemann and Crawford, and asks for a personal judgment against them for any balance of the amount of the preferred stock which the assets of the company might fail to satisfy.

To the intervening petition, as finally amended, a general demurrer was sustained, and the petitioner refusing to plead further, the petition was dismissed. From that judgment he appeals.

Appellant states the main question raised by his petition, as amended, as follows:

"Does the preferred stock of the described character on distribution of the assets of the corporation, have priority over the corporation's unsecured indebtedness to a director and a common stockholder acting as direc-

tor, incurred without the consent of the preferred stock-holders?"

In this connection it is proper to say that while under a statute providing that preferred stock may, by re-corded agreement be made a lien on the franchise and property of the corporation which shall "have priority over any subsequently created mortgage or other in-cumbrance," stockholders who have been given a prefer-ence in such manner prescribed in the statute, have been held to be entitled to be preferred to the extent specified therein (Heller v. National Marine Bank, 89 Md., 602, 43 Atlantic, 800, 45 L. R. A., 438, 737 Am. St. Rep., 212), such is not the rule in the absence of statutory author-ity. Hamlin v. Toledo, &c. R. Co., 78 Fed., 664, 47 U. S. App., 422; Guarantee Trust Co. v. Galveston City R. Co., 107 Fed., 311, 46 C. C. A., 305. On the contrary, preferred stock makes the holders thereof stockholders, and not creditors; and, except as to the preference in the payment of dividends, gives them the same rights, and no greater, and subjects them to the same liabilities, as the holders of common stock, except in so far as they may be given other rights, or relieved from liabilities, by the charter or by statute. As against creditors, they have no greater rights than common stockholders, and the corporation can not give them greater rights in the assets of the corporation as against creditors, unless by virtue of an express statutory provision. 2 Clark & Marshall "Corporations," section 413. As preferred ferred stock is a part of the capital stock of the corpor-tion, holders of such stock are not preferred to the creditors of the corporation in the distribution of its assets. Consequently, the preferred stockholders can not be reimbursed before the corporate debts are paid. Warren v. King, 108 U. S., 389; Hamlin v. Toledo, Etc., R. Co., 78 Fed., 664; Lloyd v. Pennsylvania Co., 20 Ann. Cas., 119.

Even if it be conceded that the contract in the cer-tificates of preferred stock to the effect that "no mort-gage or lien of any nature shall be placed upon the prop-erty of the company without the unanimous consent of the preferred stockholders" is a valid contract between the preferred stockholders and the common stockhold-ers, who are also creditors, we conclude that inasmuch as a lien is something distinct from a claim, and is in the nature of a security, the words "lien of any nature"

do not include the claims of general creditors. Rochester Distilling Co. v. O'Brien, 72 Hun., 462.

As no liens of any kind were placed upon the property after the issue of the preferred stock, and as the claims of appellees, Wiedemann and Crawford, are unsecured, it follows that the provision of the contract referred to is eliminated from the case.

But it is claimed that appellees violated the spirit of the contract between the common stockholders and the preferred stockholders by going ahead and incurring an indebtedness, after the issue of the preferred stock, large enough to wipe out the preferred stock. It is contended that this was wrong, because Wiedemann, as a director, and Crawford, as a common stockholder, occupied a position of trust towards the preferred stockholders, and should not have incurred an indebtedness that rendered the preferred stock worthless. It appears from the petition and the amendments thereto that appellees, Wiedemann and Crawford, simply loaned the corporation money to improve its property, and to conduct a hotel. They loaned this money at a time when it could not borrow from others. There is no allegation of fraud or bad faith on the part of appellees. There an allegation to the effect that two of the directors represented them, but it does not appear that they represented them in anywise differently from the way they represented the other stockholders. Nor are the two directors accused of representing Wiedemann and Crawford improperly, or of acting in bad faith towards the corporation or the stockholders. Not only is there an absence of any charge of fraud or bad faith on the part of appellees, or anyone representing them, but the petition shows that appellees, Wiedemann and Crawford, owned a majority of the common stock, and were, therefore, most interested in the success of the company, and made the loans to the corporation for the purpose of keeping it going. Conceding that both Wiedemann and Crawford occupied the position of trust toward the preferred stockholders and the corporation, it does not appear wherein they in any manner abused the trust. So far as the record shows, they made an honest effort to continue the business, and showed their faith in its ultimate success by putting up large sums of money, which they can never recover. While it may be true that a director, in becoming a creditor of a corporation,

may not take advantage of his position and obtain any preference over other creditors, it is well settled that he may, in good faith, make a loan to the corporation. Osborne's Admr. v. Monks, 14 R., 606; 3rd Clark & Marshall's "Corporations," 786. This is all that appellees did in this case. Having in good faith advanced the money to the corporation, they are entitled to share in the distribution of the assets upon the same terms as the other unsecured creditors. Hoover Mercantile Co. v. Evans Min. Co., 193 Pa. St., 28; Standard Cotton Seed Oil Co. v. Excelsior Ref. Co., 108 La., 74.

But it is insisted that the corporation had, at the time appellees took charge of it, and for sometime thereafter, sufficient assets to pay the preferred stockholders, and that appellees should have then wound up the corporation, and not attempted to continue the business to the detriment of the preferred stockholders. It must be remembered, however, that the stock of every corporation is much more valuable when it is a going concern. It is the duty of the directors, therefore, to make an honest effort to continue the business of the corporation. This is all that appellees did. Appellees were holders not only of common stock, but of preferred stock. Having more stock than the other stockholders, they were more interested in the success of the corporation than anyone else. Had they succeeded in the undertaking, they would have been commended; having failed, and there being no evidence of fraud, bad faith or negligent management of the company's affairs, they should be treated as any other creditors, and their claims will not be postponed until after preferred stockholders have been paid.

Other questions are discussed by counsel for appellant, but we deem it unecessary to consider them.

We conclude that the petition as amended failed to show appellant entited to the relief prayed for, and that the demurrer thereto was properly sustained.

Judgment affirmed.