## Westerfield-Bonte Company v. Burnett.

(Decided June 8, 1917.)

### Appeal from Jefferson Circuit Court.

1.   Contracts—Public Policy.—The policy of the law of the state must be sought for in its constitution, statutes and the decisions of its courts of last resort.

2. Contracts—Public Policy.—If the legislative authority has authorized the making of a certain character of contract, then the making of such contract is not contrary to public policy, but in accordance with it.

3. Corporations—Contracts Between Stockholders—Validity.—A contract between the stockholders and the corporation, by which a preference is given to one class of stock over another, when not prohibited by law nor the articles of incorporation, is valid and enforcible, unless the enforcement of such contract will injuriously affect the rights of the creditors of the corporation.

4. Corporations—Distribution Among Stockholders — Creditors.—As between the corporation and its creditors, no part of the corporate property can be distributed among the stockholders of any class, until the creditors have been paid or provided for, but, in the absence of creditors, the stockholder's rights are defined by his contract.

5. Corporations—Payment of Debts.—All classes of stock of a corporation are equally bound for the payment of its debts.

BRUCE & BULLITT for appellant.

W. PRATT DALE and BURNETT, BATSON & CARY for appellee.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

The appellant, Westerfield-Bonte Company, is a corporation organized under the corporation laws of the state of Kentucky, with its home in the city of Louisville. The capital stock consists of two hundred and fifty shares of the par value of one hundred dollars each. Sixty shares of the capital stock, of the par value of one hundred dollars each, are what is denominated preferred stock, and the remainder of the shares are what is known as common stock. At the creation of the corporation all of the stock was what is denominated common stock, but on the 4th day of June, 1910, amended articles of incorporation were adopted, in the manner provided by law, by which it was provided that sixty shares of the capital stock should be of the class known as preferred stock, and the remainder should be common stock. These amended articles were adopted by the unanimous action of all the holders of the capital stock of the corporation. The amended articles provided as follows:

"The preferred stock may, by vote of the majority of the board of directors of said company, be redeemed on any dividend date, as fixed by the by-laws, at any time after one year from the first day of July, 1910, at the price of one hundred and five dollars ($105.00) per share, and any accumulated dividends, and this preferred

stock shall, upon request to the board of directors of said company from the holders of two-thirds thereof, be retired at the price of one hundred dollars ($100.00) per share, and any accumulated dividends, at any time after July 1st, 1915.''

In the face of the certificates issued as representative of the preferred stock were the following provisions:

"This stock is part of an issue amounting in all to $6,000.00, par value, authorized by the amended certificate of incorporation of the company, filed in the office of the clerk of the Jefferson county court, in Jefferson county, Kentucky, on the 4th day of June, 1910, and subsequently lodged for record in the office of the Secretary of State, of the state of Kentucky.

"This certificate entitles the holder thereof to receive and the company is bound to pay, a fixed yearly dividend of eight per centum (8%) per annum, payable half yearly, before any dividends shall be set apart or paid on the common stock, and the dividends on the preferred stock are cumulative.''

The appellee, Henry Burnett, became the owner of forty shares of the preferred stock, which was two-thirds of it, and on July 28, 1915, made a demand in writing to the board of directors of appellant, by which he requested it to retire the preferred stock, which he held, and to pay him therefor the sum of one hundred dollars per share, with interest at eight per centum per annum from July 1, 1915. The demand was acknowledged by the board of directors, but it refused to retire the stock or redeem the same, as provided by the articles of incorporation. The appellee, on October 15, 1915, instituted this action and in addition to the above stated facts, alleged that the corporation was amply able to retire his stock and to pay him the sum necessary for that purpose, according to the articles of incorporation, without detriment or danger to the rights of appellant's creditors, and that appellant did not owe anything beyond its current bills, and that the rights of its creditors would not be in any manner injuriously affected.

The appellant, by answer and two amendments thereto, denied that the effect of the articles of incorporation was to authorize the appellee to demand the retirement or to receive the par value of his preferred stock, so long as the corporation was a going concern, except that the preferred stock might be redeemed out of the surplus funds of the corporation and without infringement upon

its capital stock, and denied that the preferred stock was entitled to any preference over the common stock, except in payment of dividends or upon a final dissolution of the corporation to be redeemed out of the assets of the corporation before the common stock should be redeemed. A denial was made that the corporation had no indebtedness beyond its current bills, or that the rights of the creditors would not be jeopardized by the payment of the appellee's claim, or that the corporation was able to pay the appellee's claim without danger or detriment to the rights of its creditors. The answer, also, alleged that the regular dividends provided for had been regularly paid upon the preferred stock until January, 1915; that the corporation had no money or property of any kind, except its machinery, equipment and supplies used in the conduct of its business; that it had $3,903.55 face value of accounts, worth sixty per centum of their face value, and that its average amount of cash on hand was about two hundred and fifty dollars; that its pay-roll was about two hundred and fifty dollars per week, and that in order to raise the money necessary to retire the preferred stock and to pay appellee's claim it would have to sell or mortgage its property; that its machinery, equipment and supplies cost originally twenty thousand dollars, but some of it was several years of age and while valuable to a going concern, would probably sell for only a small percentage of its original cost; and that the corporation owed debts to the amount of fifteen hundred dollars, and that two hundred dollars par value of its common stock had never been subscribed for nor sold. The answer, furthermore, set out in full the amended articles of incorporation heretofore referred to, bearing upon the preference provided, for the preferred stock in the payment of dividends, and the redemption of the shares, upon a final dissolution.

A general demurrer was interposed and by the court sustained to the answer as amended. Before the submission of the case, however, the appellee took the deposition of the president of the corporation and by him it was shown that after the redemption of the entire preferred stock, and the payment of all the creditors of the corporation, there would be a surplus of assets for distribution among the common stockholders of something between twelve and fifteen hundred dollars.

The action having been submitted for trial and judgment upon the pleadings, exhibits and the proof on file,

the court adjudged that to require the corporation to re-
tire the preferred stock of appellee and to pay him there-
for would not in any way injuriously affect the rights of
the corporation's creditors, and therefore adjudged that
the appellee recover of it the sum of $4,197.33, with inter-
est thereon at six per centum per annum, from the date
of the rendition of the judgment, and from this judgment
the appeal was prayed and taken.

(a)  The argument is advanced, that the judgment is
erroneous, because the action of a corporation, in Ken-
tucky, in providing in its articles of incorporation for
the redemption and retirement, on demand, of its pre-
ferred stock is void, because such action is against public
policy, and for this reason the contract between the cor-
poration and its preferred stockholders, by which it ob-
ligated itself to redeem and retire the preferred stock
at any time after July 1, 1915, upon the demand of the
holders of two-thirds of it, is void and unenforcible, be-
cause against a sound public policy.  There is a principle,
which is invoked in determining whether a thing is against
public policy, which is, to the effect, that one cannot law-
fully do that which tends to be injurious to the public,
or is contrary to the public good, and, in short, against
the policy of the law, but the policy of the law must be
sought for in the constitution and statutes and decisions
of the courts of last resort, and where the legislature
has not prohibited the making of a certain character of
contract, before a court is authorized to declare it to be
void, because against public policy, it must appear that
the agreement has a tendency to injure the public or is
against the public good or is contrary to sound policy or
good morals.  City of Princeton v. Princeton El. & P.
Co., 166 Ky. 730.  If the legislative authority has author-
ized the making of a certain character of contract, it
surely then must be held that such contract is not contrary
to public policy or the policy of the law, but in absolute
accordance with it.  U. S. Trans-Missouri Freight Ass'n,
166 U. S. 290; Heller v. National Marine Bank, 45 L. R. A.
438.  Section 564, Kentucky Statutes, in part, provides
as follows:

"Any corporation organized under this law may di-
vide its shares into classes, such as preferred, common
and deferred shares, or as may be otherwise designated,
and it may give to each of the several classes such pri-
ority of right in the payment of the dividends and in the
redemption of the shares as may be prescribed in the rules

and regulations adopted by the shareholders; and may prescribe that the holders of its bonds shall be entitled, upon terms prescribed by it, to convert the same into stock of the corporation, whether common or preferred, and that holders of its preferred stock shall be entitled, upon terms prescribed by it, to convert the same into the bonds or other obligations of the corporation. . . ."

Thus it seems that the corporation was authorized by the statute, *supra*, through its stockholders, to make the provision in its amended articles of incorporation, by which it is provided that the corporation will redeem and retire its preferred stock whenever the holders of two-thirds of it may make a demand that it be done. In Hamlin v. T. St. L. & R. R. Co., 78 Fed. 670, it was said:

"If the purpose in providing for these peculiar shares (preferred) was to arrange matters so that under any circumstances a part of the principal stock might be withdrawn before the full discharge of all corporate debts, the devise would be contrary to the nature of the capital stock, opposed to public policy, and void as to creditors affected thereby."

Further, in the same opinion, it was said:

"Ordinarily, preferred stock is entitled to no preference over other stock in relation to capital. But where there is such an agreement giving such preference, not prohibited by local law nor the charter, we see no reason why it is not a valid contract, as between the corporation and such preferred stockholders, and binding upon the common stockholders."

In the instant case, there is an express agreement, which gives the preferred stockholders a preference over the other stock, in relation to the redemption of the shares, and the agreement is not prohibited by statute nor the articles of incorporation, but is expressly authorized by the charter provisions and by the statute and provides for the retirement and redemption of any preferred stock, not only upon final dissolution, but at any time upon demand, after July 1, 1915. In Rider v. John G. Delker & Sons Co., 145 Ky. 634, which was the suit of a preferred stockholder against a corporation, and in which he insisted that he should be treated as a creditor, the court, among other things, said:

"As between themselves and the third persons, who deal with the corporation and give it credit, their stock is equally liable. It is only in cases where the corpora-

tion is insolvent, and the rights of the creditors will not be injuriously affected thereby that agreements as to preference, among themselves, may be enforced. The entire capital, with regard to any arrangement, which may exist between common and preferred stockholders, is at all times subject to and liable for the debts of the corporation, and no. part of the capital can be withdrawn from the business until the debts of the corporation are satisfied.''

From these authorities, it is gathered that an arrangement between the corporation and its preferred stockholders, by which a preference is given to the preferred stockholders over the other stockholders, either as regards the surplus or the capital of the corporation, where such agreement is not prohibited by the law nor the articles of incorporation, the contract is valid and enforcible, as between the stockholders and the corporation and between themselves. While a preferred stockholder, in his relations to the creditors of a corporation, is not a creditor of the corporation and cannot as against the creditors enforce any right he may have as against the corporation, but as between him and the corporation, or the other stockholders in it, there does not appear any sufficient reason why he should not be treated as a creditor, where he has a demand against the corporation, which can only be enforced as a debt. It is only where the carrying out of an agreement made between the stockholders and the corporation will injuriously affect the rights of the creditors of the corporation that the agreement becomes in contravention of a sound public policy.

The articles of incorporation, which constitute the contract between the corporation and its shareholders, and between the shareholders, in addition to the provisions, heretofore, set out, contained provisions to the effect, that the holders of the preferred stock should be entitled to receive, when declared, from the surplus or net profits of the corporation, yearly, dividends at the rate of eight per centum per annum, on dates to be fixed by the by-laws; that the dividends set apart to the preferred stock should be cumulative and payable before any dividend on the common stock should be paid or set apart, and if any year's dividend amounting to eight per centum should not be paid thereon, the deficiency should be payable before any dividends should be paid upon the common stock; that, whenever, all cumulative dividends on the preferred stock for all previous years shall have

been declared and shall have become payable, and the semi-annual installment for the current year shall have been declared, and the corporation shall have paid such cumulative dividends for previous years, and such accrued semi-annual installment, or shall have set apart from its surplus or net profits a sum sufficient for the payment thereof, the board of directors may declare dividends on the common stock, payable out of any remaining surplus or net profits; that in the event of any liquidation and dissolution or distribution of the assets of the company or winding up (whether voluntary or involuntary) of the corporation, the holders of the preferred stock should be paid in full, both the par amount of their shares and the unpaid dividends accrued thereon, before any amount should be paid to the holders of the common stock; and after the payment to the holders of the common stock the par value of it, the remaining assets and funds should be distributed ratably among all the stockholders, without preference. From a consideration of these provisions, it is insisted that the retirement and redemption of the preferred stock, as provided by the section of the amended articles of incorporation heretofore quoted, only means and intends that the preferred stock shall be redeemed from the surplus and net earnings of the corporation, until its final dissolution; and when it is construed to mean that the redemption may be demanded and enforced, when to make the redemption it would be necessary to appropriate any part of the capital of the corporation, that the provision authorizing the redemption is void. It will be observed that these provisions only relate to a preference in the matter of the payment of declared dividends while the corporation is a going concern, and before the necessity has arisen to liquidate its affairs upon a final dissolution or winding-up, and upon a dissolution or winding up a preference in favor of the preferred stock is declared, in which it is provided that the preferred stock shall be paid in full, with any accrued dividends, out of the assets of the corporation, before any payments are made in satisfaction of the common stock. There is no apparent reason for holding that these provisions control, in any way, the agreement heretofore quoted, by the corporation and its stockholders to retire and redeem the preferred stock at any time upon demand, after July 1, 1915, except that if it was necessary for the retirement and redemption of the preferred stock, that a winding-up of the

affairs of the corporation should be had, that the preferred stock should be first satisfied out of the assets, generally. It will be observed that the provision of the articles of incorporation, which authorizes the redemption of the preferred stock upon demand, after July 1, 1915, does not limit the corporation to the use of the surplus or net profits for that purpose, but, unequivocally, requires the corporation to make the redemption, and does not provide from what source the funds may be obtained, while, with relation to the preference in the payment of the dividends, while the corporation is a going concern, it is limited to the use of the surplus or net earnings, and upon final dissolution, when both capital and net earnings must be distributed, provides for a preference in favor of the holders of the preferred stock. It is significant, that while providing for the payment of the dividends while the corporation is a going concern out of the net profits, when it becomes necessary to retire and redeem the preferred stock upon demand, after July 1, 1915, the articles fail to provide that the redemption shall be made out of the surplus. Hence, it must be concluded, that when the contract was entered into, it was not contemplated that such construction should be placed upon it, as that the retirement and redemption of the preferred stock provided for should be limited to the use of the surplus, only, for that purpose. If it had been intended that the preferred stock should be redeemed out of the surplus, only, in the light of the other provisions, it would have been surely so provided. The provisions in the articles of incorporation relating to the preference in favor of the preferred stockholder, in the payment of dividends, is only declaratory of the general rule upon that subject, where there is no provision in the articles for the retirement and redemption of the preferred stock, as is provided in the articles of appellant corporation. In the payment of the yearly dividends, either fixed at a certain per centum or otherwise, it is contemplated, that the payment shall be made from the surplus earnings. If there are no earnings, there is no dividend earned and none can be properly declared. Until a dividend is declared, an ordinary action for its collection cannot be maintained, either in behalf of a preferred or a common stockholder. The preferred stockholder, in the absence of a statute authorizing it or a contract providing for it, cannot maintain a suit against the corporation for the recovery of the par value of his

stock, or for the recovery of a dividend, until it has been declared or set apart, although a suit might be maintained to require the declaation of a dividend when the facts warrant it. Rider v. Delker & Sons Co., 145 Ky. 634; Fryer v. Wiedman, 148 Ky. 379; Smith v. Southern Foundry Co., 166 Ky. 208. This action, however, does not involve the recovery of a dividend, as none had been declared, which was unpaid, and the recovery of no dividend was sought in the action.

It is an undisputed doctrine, that corporate property must first be appropriated to the debts of a corporation before there can be any distribution of it among the stockholders, holding either preferred or common stock, as both classes of stock are equally liable to the creditors of the corporation. There can be no lawful distribution of the capital of the corporation among the stockholders, without the corporate debts having been first paid or provided for, but in the absence of any creditors, or where provision has been made for them or exists for them, the rights of the preferred stockholder depends upon his contract with the corporation. 7 R. C. L., sections 170, 171. A judgment should not be rendered, by which any of the assets of a corporation are appropriated to the payment of any claim of a stockholder growing up out of a contract for a preference among the stockholders, if such appropriation would endanger the collection of the corporate debts. The corporation, however, is the property of the stockholders, and if they contract in such a way as to be legally bound to appropriate a portion of the capital to redeem the share of the preferred stockholder, the contract may be enforced, if the enforcement does not affect the collection of the claims of the creditors of the corporation. In the instant case, the rights and remedies of any creditor of the corporation, either against the corporate property or against a preferred stockholder, whose stock might be redeemed out of the assets of the corporation, or who might receive the proceeds of the sale of the corporate property, are not here determined, as the questions are not before us upon the record, but suffice it to say, that the answer failed to show that the enforcement of the contract of appellee with the corporation would endanger the collection of the corporate debts. Hence, the judgment sustaining the demurrer is affirmed. It may be added, that the deposition of the president of the corporation, which is made a part of this record by appel-

lant, affirmatively shows that after the redemption of the preferred stock and the payment of all the corporate debts, there will be a surplus equal to the amount of the corporate debts, of the assets of the corporation left for distribution among the stockholders.

The judgment is therefore affirmed.