## Fayette Realty & Finance Company v. Commonwealth, by, etc.

(Decided March 22, 1929.)

ALLEN, BOTTS & DUNCAN for appellant.

HARRY D. KREMER for the Commonwealth.

OPINION OF THE COURT BY COMMISSIONER STANLEY— Reversing.

The appellant, Fayette Realty & Finance Company (to be referred to as the realty company), was incorporated in 1914, with $1,000 common stock, and $230,000 of 5 per cent. cumulative preferred stock, convertible at the option of the holders into 5 per cent. first mortgage bonds. On May 25, 1924, the realty company acquired by deed the Fayette National Bank building in Lexington for $230,000 cash, and other valuable consideration agreed to be paid. On the same day it mortgaged the building to the Security Trust Company of Lexington, as trustee, to secure an issue of bonds in the sum of $230,-000 into which the preferred stock was convertible. After this mortgage was executed, but on the same day, the realty company, in consideration of the release and discharge from the payment of the balance of the purchase price, reconveyed to the Fayette National Bank (to be referred to as the bank) an undivided twenty-seven fiftieths interest in the building, and leased to it for a period of 20 years the remaining twenty-three fiftieths interest, all of which was subject to the mortgage. For this lease the bank became obligated to pay to the realty company $11,500 annually during the first two years, and $21,500 annually during the remainder of the term.

Thus the relations between the two corporations continued until June 29, 1920, when the realty company conveyed to the bank an undivided four-fiftieths interest in the building, which represented $40,000 of the preferred stock which had been retired. This left the realty company owning nineteen-fiftieths of the property. On the same day, by a separate deed, the realty company conveyed, subject to the mortgage of the Security Trust Company, trustee, the remaining nineteen-fiftieths undivided interest in the building in consideration of $190,-000, payable at the rate of $21,500 or more annually, with interest, and in further consideration of the payment of all taxes by the bank, the cancellation of the lease of May 25, 1914, and the mutual release of all obligations between the parties.

The deed is quite lengthy. It is provided in it that, in order that the bank might be fully protected and indemnified against any loss or damage which it might sustain or incur by reason of the mortgage to the trust company existing upon the property, the realty company

covenanted and agreed that it would use and apply at the time of the payment thereof the interest paid on the deferred purchase price of the property to the payment of dividends upon the preferred stock, and apply the balance, together with the payments on the principal of the purchase price, "to the retirement of so much of the preferred stock then outstanding at par or mortgage bonds at par into which any of such stock may have been converted." It was further provided that, in the event the realty company did not so apply the payments made by the bank, the bank should be released and discharged from its obligation until the realty company had so used and applied the payments theretofore made.

But on December 12, 1921, another instrument was executed by the realty company and accepted by the bank; its purpose being, as therein recited, to correct and clarify the deed of June 29, 1920, and to evidence the intent and agreement of the parties, in executing it. The material portion of this instrument is as follows:

> "Now, therefore, for the purpose of correcting said mistake and making said deed conform to the agreement of the parties, it is agreed between the parties of the first and second parts that the sum of $190,000.00 and any interest thereon shall be at once applied and paid upon and towards the payment of the dividends upon and the redemption of the $190,000.00 of preferred stock which had been issued by said first party and outstanding upon the date of said deed, the intent and purpose of said deed being that the second party (the Bank) in consideration of the conveyance to it of said interest in said real estate, *should assume and pay off the liability of the first party upon the preferred stock* held by divers persons, and which was to be redeemed under and in accordance with the terms of the charter of said property of the first part."

This must be considered in connection with the deed. The effect of these instruments was that, in consideration of the conveyance of the realty company's undivided interest in the building, the bank obligated itself to satisfy the owners of the preferred stock or of the bonds (though it appears that none of the stock was ever converted) by paying the dividends or interest and redeeming the stock or bonds according to the terms under which they were

issued. The bank thus assumed the realty company's obligation. The former indebtedness to it as a corporate entity was transferred direct to its preferred stockholders or bondholders; and it was indemnified against the failure of the bank to redeem its preferred stock or pay its bonds.

This suit was instituted on September 8, 1924, in the Fayette county court by the commonwealth, by the revenue agent for the state at large, against the realty company, seeking to have assessed for taxation, and the company adjudged liable for taxes and penalties, on July 1, 1920, 1921, 1922, and 1923, what was charged to be a debt owing to the defendant by the Fayette National Bank in the principal sum of $190,000 secured by lien on its building "created, reserved and expressed" in the foregoing deed of June 29, 1920. The county court denied the prayer of the petitioner, but, on appeal to the circuit court, it was adjudged that the realty company was liable for the taxes and penalties on $190,000, assessable on July 1, 1920, and $180,000 for each of the subsequent three years—it being stipulated that $10,000 had been paid between July 1, 1920, and July 1, 1921. From that judgment this appeal is prosecuted.

If the transaction between the parties was only as evidenced by the deed of June 29, 1920, there could be no doubt that the realty company was liable for taxes on the debt due it by the bank. But the transaction and obligation is as evidenced by the two instruments.

To sustain its position it was necessary that the commonwealth prove that the realty company had intangible property, with a cash value, acquired under the deed as corrected, which it had failed to list.

Section 172 of the Constitution provides that:

"All property, not exempted from taxation by this constitution, shall be assessed for taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale."

Section 4020 of the Statutes reads in part:

"All real and personal estate within this state, and all personal estate of persons residing in this state, and all corporations organized under the laws of this state . . . shall be subject to taxation . . . and shall be assessed at its fair cash value,

estimated at the price it would bring at a fair voluntary sale."

It is clear that only property having a cash value on the market can be taxed. If there is an enforceable, collectible demand that one person has against another or against property upon which it is in lien and out of which it can be collected, it is property within the meaning of the statute. Commonwealth v. Ky. Distilleries & Warehouse Co., 143 Ky. 314, 136 S. W. 1032. But did the realty company have an enforceable, collectible demand against the bank until and unless the bank failed to comply with its obligations to the holders of the stock? The question is: Could any bidder be found who would pay a cash price for this contingent and uncertain interest of the realty company? If not, then that interest is not taxable. There was no proof tending to show that this lien or right of the realty company under these instruments had any market value. Nor could it have been proven, for the realty company had nothing it could sell. There was evidence that the debt *"owed by* the Fayette National Bank and secured by a 19/50 interest on the building was worth $190,000, but there is no proof of any cash value of the *lien owned* by the realty company. The *debt* was owing to the holders of the stock or bonds. It had nothing that could be of any value to anybody else. The lien of the company on the building had a value only to itself, because it merely guaranteed that the bank would redeem the preferred stock which it had outstanding. The transfer did not affect the status of the preferred stockholders, for they already had a mortgage upon this building securing them in the redemption of their stock or the payment of their bonds. The debt owed by the bank, which was proved to have value, was owed to the shareholders or bondholders. To put it in simple terms, we may consider that the realty company was obligated to these stockholders or bondholders in the sum of $190,000, secured by lien on its property. It conveyed the property to the Fayette National Bank, which assumed its obligations and the company only reserved a lien to guarantee or secure the payment of those obligations. Retaining this lien gave the realty company nothing that had any market value. It had nothing upon which it could borrow money nor anything it could sell. It is possible for a lienholder to have a very valuable lien and yet not have anything that has any cash value.

For example: A induces B to become his surety to C for $10,000 borrowed money, and, to indemnify him, A gives to B a mortgage on his home. B has nothing he could sell; yet he does have a valuable right acquired by that instrument. It could not be seriously contended that this inchoate, intangible right, or right of indemnity, is subject to taxation. Yet that is exactly the kind of thing sought to be taxed here. A lien is not taxable. It is the thing secured by the lien.

There is a clear distinction between an obligation secured by a mortgage and the mortgage itself. In Allen v. Shepherd, 162 Ky. 756, 173 S. W. 135, it is pointed out that a mortgage is merely ancillary to the debt, and, if an action cannot be maintained on the debt, the lien which is only a security cannot be enforced. In that case the mortgage sued on contained no words of promise or agreement to pay money; it being merely an indemnifying lien, such as was reserved by the realty company in these transactions with the bank upon which this suit is founded. It is well settled that a debt secured by mortgage is the principal thing and the mortgage a mere incident thereto (Burdett v. Clay, 8 B. Mon. 287; 37. Cyc. 786), and that the transfer of the mortgage without the debt passes nothing (Willis v. Vallette, 4 Metc. 195).

In Commonwealth ex rel. v. Kentucky Dist. & Warehouse Co., 132 Ky. 521, 116 S. W. 766, 21 L. R. A. (N. S.) 30, 136 Am. St. Rep. 186, 18 Ann. Cas. 1156, it was held that a trade-mark was not taxable, although it was of considerable value to the owner. Said the court: "A trade-mark is property largely in the sense that a good name is property." Of like class is the good will of a business, which is not taxable, independent of the business. Hart v. Smith, 159 Ind. 182, 64 N. E. 661, 58 L. R. A. 949, 95 Am. St. Rep. 280. Notes held by a mutual insurance company, payable on demand as the company deemed it necessary to meet losses of its members, being contingent and having no cash value at a voluntary sale, were held nontaxable. Kentucky & Louisville Mutual Ins. Co. v. Com., 153 Ky. 824, 156 S. W. 897, 45 L. R. A. (N. S.) 597. Accident insurance policies and bonds of indemnity are valuable to the beneficiaries, but none of them are subject to taxation, because they have no present cash value. Idem. In Commonwealth v. Travelers' Ins. Mach. Co., 181 Ky. 596, 205 S. W. 561, it was held that a claim for breach of contract which was subse-

quently reduced to judgment and affirmed on appeal was not taxable property, because at the time of assessment it was an indefinite, contingent, and unliquidated claim. While agreeing that things in action and evidences of debt were personal property, yet, said the court, "It is also the rule that in order for a debt or claim to be taxable it should be a legal demand such as the law will recognize and enforce, fixed and certain and not indefinite or contingent, and liquidated as to its amount, though it need not be immediately payable." An option for the purchase of real estate, though valuable, is not taxable. In re Shields Bros., 134 Iowa, 559, 111 N. W. 963, 10 L. R. A. (N. S.) 1061, and note. Other species of property having a value to the owner but not a market value may be readily conceived. See 26 R. C. L. 138; 37 Cyc. 781 et seq. The rights or interest retained in the instruments of June 29, 1920, and December, 1921, are contingent and had no value so long as the bank fulfilled its obligation to the holders of the preferred stock.

A corporation is an entity, and has its existence separate from its stockholders and irrespective of the persons who own its stock. Commonwealth v Muir, 170 Ky. 435, 186 S. W. 194. There is a greater difference in the relation existing between the realty company and its preferred stockholders than in the ordinary relation of a corporation and its stockholders. It is effectually the relation of debtor and creditor, although the claims are subject always to the superior rights of creditors of the corporation. Concerning this relation, we said, in Westerfield-Bonte Co. v. Burnett, 176 Ky. 188, 195 S. W. 477:

"While a preferred stockholder, in his relations to the creditors of a corporation, is not a creditor of the corporation and cannot as against the creditors enforce any right he may have as against the corporation, but as between him and the corporation, or the other stockholders in it, there does not appear any sufficient reason why he should not be treated as a creditor, where he has a demand against the corporation, which can only be enforced as a debt."

The company was obligated to redeem and cancel annually not less than $10,000 of the par value of the outstanding stock or its bonds. This was a valid, binding contract. Westerfield-Bonte Co. v. Burnett, supra. It was this obligation that was assumed by the Fayette National Bank in consideration of the conveyance to it of

the property of the company. There is no evidence that the realty company owned, or, to be more exact, that it had in its treasury, any of this preferred stock or any of the securities which the bank was obliged to pay.

Presumably before the conveyance of June 29, 1920, the realty company listed its interest in the building for taxation. Afterward the bank listed it. The lien in the deed securing the payment of $190,000 to the trust company for the benefit of the preferred shareholders or bondholders did not affect their status or add to their security. Their rights were already fixed and their securities already made safe by the original mortgage of the realty company to the trustee executed six years previously. A simple illustration may make our meaning clear: A mortgages his house to B for $10,000 to secure a note for that sum payable five years thereafter. A sells his house to C and retains a lien by which C undertakes to pay to B this $10,000. The status of B is not affected. A had to list the house for taxation before the sale. C must list it for taxation after the sale. During all the time B had to list the note for taxation, and it was no more valuable and no better secured after the sale than it was before. The suggested situation cannot be distinguished from the one involved in this litigation.

The proceeds of this stock were used to pay for the nineteen-fiftieths interest in the property, which was subsequently conveyed to the bank under an agreement whereby the bank assumed to satisfy the holders of the stock. Looking beyond form and through to substance, this is the condition: The bank had the money of the stockholders and agreed to pay them. They owned the evidences of that promise, which was intangible property, subject to taxation except as it might be exempted under section 4088 of the Statutes. As a matter of fact, the record shows at the time of trial the bank owned $150,000 of the outstanding stock of the realty company, and, as a practical result, it owed itself that sum under these arrangements. The bank under these conveyances and commitments owed the realty company as an equity absolutely nothing, and the realty company could collect nothing from it. Consequently, it had nothing, so far as this transaction is concerned, of a cash value subject to taxation.

The appellee insists that, since the realty company was the owner of record of the debt obligation, it was liable for the taxes as provided in section 4051a (10),

which declares that, "unless any assignment is made of record, the original holder or owner shall be liable for taxes as though no assignment had been made." The case of Shrader v. Semonin, 123 Ky. 605, 96 S. W. 904, construing this section, is relied on. The fallacy of appellee's argument in this respect lies in the fact that there was never anything created in favor of the company which it could have assigned of record. Reading the two instruments together, on their face they showed the obligation to be to the holders of the stock and bonds and that they were the owners of the intangible property sought to be taxed.

Another defense offered by the appellant company to this action is that it was a mere agency of the Fayette National Bank, the obligor of the indebtedness sought to be taxed; that is, that there was only a trust relation existing between the two corporations. The many details of the plan, purpose, and result of this relationship tend to obscure the real and controlling issue as we have determined it. In brief, the history of the appellant company and its interlocking arrangements with the Fayette National Bank are these: In 1914, the bank owed $230,-000 on its building, which was valued at $500,000. It did not desire to use any of its capital or surplus to discharge the debt, nor to have its borrowing limit thus decreased. To avoid this, it caused the realty company to be incorporated by friends of the institution for the purpose of using it as a medium to obtain the money for a long term of years and at a less rate of interest than it could be had for the short time to which the bank was restricted. The realty company secured the $230,000 from two trust companies to whom was issued its preferred stock. The transactions mentioned in the first part of this opinion were had pursuant to the plan adopted for thus relieving the bank. The realty company never engaged in any business other than to carry out the plan suggested. It owned no other property of any kind. All of the transactions were conducted by officers and employees of the bank but in the name of the realty company. The expenses of its incorporation and all other costs were borne by the bank. The legality of the plan was guaranteed by a title company, and the scheme was approved by the Comptroller of the Treasury, and throughout all of the transactions the bank was the beneficiary, and the record shows the bank was considered by those who acquired the stock as the principal with whom they were dealing.

Notwithstanding these things, the realty company was a duly organized and existing corporation. It had different officers and was altogether a separate and distinct entity from the bank. Whether or not, as appellant contends, the relations were such as to constitute it an agent or trustee of the banking institution in these matters, or the bank itself was the beneficiary of the scheme and the principal in all the transactions, carrying with it the consequent liability, need not be considered or determined. We do not say that under a scheme of this character conditions may not arise, or an interest or right not be vested, which could not have a taxable value. The conclusion reached is that in this particular case the rights of the realty company under the deed of June 29, 1920, as corrected on December 12, 1921, have no market value, and hence are not taxable.

Other points raised in briefs, particularly that raised by appellee as to the ultra vires of the transaction, or the validity of the plan and subsequent operations, have been considered by the court, but do not in its opinion affect the ultimate decision.

The judgment is reversed for proceedings consistent herewith.

Whole court sitting, except Judge Clay.