## In re PHŒNIX HOTEL CO., LEXINGTON, KY.*

### No. 907.

District Court, E. D. Kentucky.

Oct. 26, 1935.

230

Stoll, Muir, Townsend & Park and S. S. Yantis, all of Lexington, Ky., for Roy Carruthers, trustee.

Hunt & Bush and Rufus Lisle, all of Lexington, Ky., for Security Trust Co., trustee for bondholders.

Allen, Duncan & Duncan, of Lexington, Ky., for Union Bank & Trust Co., executor.

Frank Ginocchio, of Lexington, Ky., for R. L. and Auval Baker.

FORD, District Judge.

This is a proceeding for the reorganization of the Phœnix Hotel Company of Lexington, Kentucky, under the provisions of sections 77A and 77B of the Bankruptcy Act (11 U.S.C.A. §§ 206, 207).

The petition was approved by the court and a trustee was duly appointed and qualified with power to operate the business and affairs of the debtor under the orders of the court.

The trustee was directed to report to the court all claims filed against the estate of the debtor and to classify the claims and report the respective priorities as between the various classes of claims.

It appears that the debtor, the Phœnix Hotel Company, is a corporation organized and existing under the laws of Kentucky and engaged principally in the business of conducting and operating a hotel in the city of Lexington, Ky.

The company was originally incorporated in 1891. On the 19th day of December, 1921, the original articles of incorporation were amended authorizing an increase in the capital stock of the company by the amount of $1,000,000 par value by the issue of first preferred stock to the amount of $750,000 and second preferred stock to the amount of $250,000, and further providing for the conversion of both classes of said stock into bonds or other obligations of the corporation, upon such terms as might be prescribed by the board of directors.

Pursuant to these amended articles and in accordance with appropriate resolutions of the stockholders and board of directors, the company issued and sold $750,000 par value of the first preferred stock and $250,000 par value of the second preferred stock and at the same time executed first and second mortgages to the Security Trust Company of Lexington, Ky., as trustee, covering all of the company's real estate, furniture, fixtures, and machinery. The first mortgage was to secure the payment of 750 first refunding and improvement gold bonds of the par value of $1,000 each due and payable January 1, 1947, and bearing interest at the rate of 6 per cent. per annum from January 1, 1922, payable semiannually. The second mortgage was to secure an issue of 250 second improvement gold bonds of the par value of $1,000 each, due and payable on the first day of January, 1947, bearing interest at the rate of 7 per cent. per annum from the

first day of January, 1922, payable semiannually.

The bonds described in each of the said mortgages were executed and delivered to the trustee simultaneously with the execution of the mortgages.

The first mortgage provided that the bonds executed and delivered to the trustee and described in said mortgage should be held, issued, and used by said trustee only for the purpose of being exchanged, par for par, for shares of the first preferred stock of the company, in multiples of ten, upon proper presentation and surrender of said stock.

The second mortgage provided that the bonds executed and delivered to the trustee and described in said mortgage should be held, issued, and used by said trustee only for the purpose of being exchanged, par for par, for shares of the second preferred stock of the company, in multiples of ten, upon proper presentation and surrender of said stock.

The certificates evidencing the first preferred stock contained the stipulation that the shares of stock represented thereby, in multiples of ten, might be converted, at the election of the holder, into first refunding and improvement mortgage bonds described in and secured by the said first mortgage, and the certificates evidencing the second preferred stock contained the same option of conversion into second mortgage bonds.

Prior to 1933, the company became indebted to R. L. Baker in the sum of $50,000, to Auval Baker in the sum of $50,000 and to Miss Elizabeth Stanhope in the sum of $49,500, for money loaned the company for use in the operation of its business. All of said debts are evidenced by promissory notes of the company.

The company is also indebted upon open accounts to numerous creditors to the extent of approximately $19,000 in the aggregate.

In 1933 most of the holders of the first preferred stock exchanged their stock for first mortgage bonds and in 1934 a large number of the holders of the second preferred stock likewise exchanged their stock for second mortgage bonds.

The trustee has reported to the court these claims together with his recommendation and opinion that the preferred stockholders who have converted their stock into first mortgage bonds are entitled, by virtue of said mortgage, to a first and prior lien upon the assets of the company, superior to the claims of all other creditors of the company and that the second preferred stockholders who have converted their stock into the second mortgage bonds are entitled to be adjudged a lien inferior to the first mortgage bondholders but prior and superior to all other creditors.

To this report of the trustee, R. L. Baker, who holds an unsecured note of the company for $50,000, Auval Baker, who holds an unsecured note of the company for $50,000, and the Union Bank & Trust Company, as executor of Miss Elizabeth Stanhope, which holds an unsecured note for $49,500, have filed exceptions.

Obviously the approval of any plan of reorganization must await the determination of the relative rights of priority as between these preferred stockholders who have converted their stock into bonds and the general creditors of the corporation.

The contentions of the general creditors, constituting the basis for their exceptions to the report of the trustee, and their claim to priority are (1) that all provisions of the contract or arrangement, hereinabove referred to, between the company and its preferred stockholders, by the terms of which the preferred stockholders purported to acquire a lien upon or any right to the assets of the company superior to the rights of general creditors or even upon an equality with them, were entirely unauthorized by the laws of Kentucky, are in direct violation of section 560 of the Statutes of Kentucky, and are contrary to the public policy of the state; and (2) that the issuance of bonds of the company in exchange for preferred stock at the time and in the manner disclosed in this record was in contravention of section 193 of the Constitution of Kentucky.

The preferred stockholders who have exchanged their stock for bonds, claiming priority by virtue of the mortgages securing their bonds, rest their claims entirely upon the powers, expressly and by necessary inference, conferred upon corporations by the terms of section 564-1 of the Statutes of Kentucky, the pertinent provisions of which are as follows: "Any corporation organized under this law may divide its shares into classes, such as preferred, common and deferred shares, * * * and it may give to each of the several classes such priority of right * * * in the redemption of the shares, as may be prescribed in the rules and regulations

adopted by the shareholders; and may provide * * * that holders of its preferred stock shall be entitled, upon terms prescribed by it, to convert the same into the bonds or other obligations of the corporation."

■ This case involves no question arising under the Constitution or Statutes of the United States or of general or commercial law. The questions to be decided concern only the laws and the public policy of the state of Kentucky relative to the powers of corporations created under state statutes and deriving their powers therefrom. It appears to be a settled rule of federal jurisprudence that it is exclusively the province of the highest court of the state to decide questions so distinctly local, and when so decided the federal courts, sitting in that state, will adopt and follow such decisions without question. This rule seems to be especially applicable to cases involving interpretation of state statutes defining and limiting the powers of corporations created and existing under state laws, and the nature and extent of the rights and interests of stockholders and creditors in and to the property of such corporations. The ordinary administration of the law in such matters is carried on by the state courts. By the course of their decisions certain rules of interpretation are established and public policies declared which have all the effect of law. When so established and declared by the highest court of the state, they are regarded by the federal courts as authoritative and controlling declarations of what the law is in that state. Elmendorf v. Taylor, 10 Wheat. 152, 6 L.Ed. 289; Burgess v. Seligman, 107 U.S. 20, 2 S.Ct. 10, 27 L.Ed. 359; Hawks v. Hamill, 288 U.S. 52, 53 S.Ct. 240, 77 L.Ed. 610; Petition of Stuart et al. (C.C.A.) 272 F. 938; Keystone Wood Co. v. Susquehanna Boom Co. (C. C.A.) 240 F. 296, and Hughes Federal Practice, §§ 3692–3700.

■ Only in the absence of a decision of the state court applicable to the questions under consideration will the federal courts exercise their independent judgment upon such questions of local law.

Acting in accordance with this rule, founded as it is, not only upon comity, but upon the necessity of avoiding, if possible, the anomalous and confusing results which would arise from lack of harmony between two co-ordinate jurisdictions dealing with purely local matters in the same territory, we turn to the consideration of the decisions of the Kentucky Court of Appeals.

In the case of Rider v. John G. Delker & Sons Co., 145 Ky. 634, 140 S.W. 1011, 1012, 39 L.R.A.(N.S.) 1007, the plaintiff, Rider, was the owner of five shares of the preferred stock of the defendant corporation which, according to the terms of its charter and the stock certificate, the corporation had agreed to redeem at par value at any time after five years from date of organization, upon six months' previous notice to the corporation. The court held that as between the corporation and the preferred stockholder this was a valid contract which the stockholder was entitled to enforce "unless the rights of creditors would be affected thereby." The court said: "In this state there is no statute giving to the holders of preferred stock a lien upon the property of the company." And, further, "It is only in cases where the corporation is solvent and the rights of creditors will not be injuriously affected thereby that agreements as to preferences among themselves may be enforced. The entire capital, without regard to any arrangement which may exist between common and preferred stockholders, is at all times subject to and liable for the debts of the corporation, and no part of the capital can be withdrawn from the business until the debts of the corporation are satisfied."

In the case of Fryer v. Wiedemann, 148 Ky. 379, 146 S.W. 752, 754, 39 L.R.A. (N. S.) 1011, the Kentucky court had under consideration the rights of priority as between a preferred stockholder and the corporation's creditors in view of a certain stipulation contained in the stock certificate. The court said: "As against creditors, they have no greater rights than common stockholders, and the corporation cannot give them greater rights in the assets of the corporation as against creditors, unless by virtue of an express statutory provision. * * * Consequently the preferred stockholders cannot be reimbursed before the corporate debts are paid."

In the case of Smith v. Southern Foundry Co., 166 Ky. 208, 179 S.W. 205, 206, decided in 1915, many years after the enactment of the statute above quoted, but prior to the transaction here involved, in dealing with a similar question, the court said: "Priority as to dividends, liens, and redemptions relate to stockholders, and they are rights which the preferred stockholder has over the common. The charter and

certificate must be construed in connection with the statute, and in this state there is no statute giving to the holders of preferred stock a lien upon the property of the company to the prejudice of creditors."

The case of Westerfield-Bonte Co. v. Burnett, 176 Ky. 188, 195 S.W. 477, 480, was decided by the Court of Appeals of Kentucky in 1917, and dealt with a corporation which on June 4, 1910, adopted amended articles of incorporation by and under which the corporation obligated itself to redeem and retire its preferred stock at any time after July 1, 1915, upon demand.

Section 564-1 of the Kentucky Statutes, in its present form, was then in force and effect and is quoted in full by the court in its discussion of the powers acquired by corporations thereunder relative to prescribing the terms under which preferred stock might be redeemed. After holding that a contract providing for preference to preferred stockholders as regards the capital of the corporation is valid and enforceable as between the stockholders and the corporation, the court said: "It is only where the carrying out of an agreement made between the stockholders and the corporation will injuriously affect the rights of the creditors of the corporation that the agreement becomes in contravention of a sound public policy," and "A judgment should not be rendered, by which any of the assets of a corporation are appropriated to the payment of any claim of a stockholder growing up out of a contract for a preference among the stockholders, if such appropriation would endanger the collection of the corporate debts."

It would seem that we may regard this case, if not necessarily an interpretation of section 564-1 of the Statutes on the precise question here involved, as affording a clear declaration of the public policy of the state in the light of the existing statutory law.

In the case of Justice et al. v. Elkhorn Wholesale Grocery Co. et al., 218 Ky. 586, 291 S.W. 780, 781, the court dealt with the question of the rights of a preferred stockholder whose stock, under the articles of incorporation, was secured by first lien upon the property of the corporation. The court said: "Although Justice [the appellant] might, as between him and the common stockholders, have a prior lien on the assets of the company on dissolution by virtue of the provisions in the articles of incorporation above mentioned, yet the law is perfectly plain that, as between him and the creditors of the company, he has no such lien." This case was decided in 1927.

In the case of Fayette Realty & Finance Co. v. Commonwealth, 229 Ky. 556, 17 S.W. (2d) 722, the opinion sets out the corporate structure of the appellant as follows: "The appellant, Fayette Realty & Finance Company (to be referred to as the Realty Company), was incorporated in 1914, with $1,000 common stock, and $230,000 of 5 per cent. cumulative preferred stock, convertible at the option of the holders into 5 per cent. first mortgage bonds." Although the questions involved in the case did not in any way concern the relative priorities as between the stockholders and the creditors of the corporation, the court, by way of dictum, made this comment with respect to the relation: "There is a greater difference in the relation existing between the Realty company and its preferred stockholders than in the ordinary relation of a corporation and its stockholders. It is effectually the relation of debtor and creditor, although the claims are subject always to the superior rights of creditors of the corporation." Of course, this dictum of the court is lacking in the force of a controlling decision. Yet, should it be entirely ignored? Mr. Justice Cardozo, in the case of Hawks v. Hamill, 288 U.S. 52, 53 S.Ct. 240, 242, 77 L.Ed. 610, in referring to "dicta" under somewhat similar circumstances, said: "A wise comity has decreed that deference shall at times be owing, though there may be lacking, in the circumstances, a strict duty of obedience. * * * In controversies so purely local, little gain is to be derived from drawing nice distinctions between dicta and decisions. Disagreement with either, even though permissible, is at best a last resort, to be embraced with caution and reluctance."

None of these cases, above referred to, involve the precise question of the redemption of preferred stock by conversion into bonds, in the manner disclosed in this record. However, they appear to differ from the instant case only in the method employed and not in principle.

■ Upon the point that, in the absence of clear and express statutory authority, any contract or arrangement between a cor-

poration and its stockholders conferring upon stockholders rights to or interests in capital assets, to the detriment of corporate creditors, is ultra vires and void, the Kentucky cases appear to be in full accord with the authorities generally prevailing on the subject. Warren v. King, 108 U.S. 389, 2 S.Ct. 789, 27 L.Ed. 769; Hamlin v. Toledo, St. L. & K. C. R. Co. (C.C.A.) 78 F. 664, 671, 36 L.R.A. 826; Ellsworth v. Lyons (C.C.A.) 181 F. 55; Shaffer v. McCulloch (C.C.A.) 192 F. 801; Spencer v. Smith (C.C.A.) 201 F. 647, and Armstrong v. Union Trust & Savings Bank (C.C.A.) 248 F. 268.

In the case of Hamlin v. Toledo, St. L. & K. C. R. Co., supra, the United States Circuit Court of Appeals of the Sixth Circuit had under consideration the rights of preferred stockholders holding certificates providing security for their stock by a lien on the property of the corporation. The court, speaking through Judge Lurton, said: "If the purpose in providing for these peculiar shares was to arrange matters so that, under any circumstances, a part of the principal of the stock might be withdrawn before the full discharge of all corporate debts, the device would be contrary to the nature of capital stock, opposed to public policy, and void as to creditors affected thereby."

The preferred stockholders, in support of their position, cite the case of Heller v. National Marine Bank, 89 Md. 602, 43 A. 800, 801, 45 L.R.A. 438, 73 Am.St. Rep. 212. This case was decided under a statute of the state of Maryland providing in clear and express terms that preferred stock may, by recorded agreement, be made a lien on the franchise and property of the corporation which shall "have priority over any subsequently created mortgage, or other incumbrance." That case seems to fully recognize the general rule set out in the Kentucky cases which applies where no such clear and express statutory provisions exist. The preferred stockholders also cite the cases of Alabama Consolidated Coal & Iron Co. v. Baltimore Trust Co. (D.C.) 197 F. 347, and Allen v. Francisco Sugar Co. (C.C.A.) 193 F. 825. The decision of both of these latter cases turns on the relationship as between preferred stockholders, common stockholders, and the corporation, and neither of them deals with the question of priority as between preferred stockholders and corporate creditors.

As the decision of the case here under consideration turns upon the absence of express statutory authority in Kentucky to exercise the powers sought to be exercised by the hotel company, the cases cited by the trustee and the preferred stockholders, arising in jurisdictions wherein statutes had been enacted expressly and clearly investing corporations with such powers, have no application to this case, nor have the authorities cited which deal solely with the priorities as between preferred stockholders, common stockholders, and the corporation.

█ The contention that the so-called preferred stock bondholders were and are in reality creditors and entitled to be treated as such, and are not stockholders, is fully answered by reference to the provisions of the charter which, in unequivocal terms, attaches to them every attribute of stockholders, created by virtue of an authorized increase of capital stock, entitled to a fixed dividend derived from earnings and not bearing interest, and entitled to participation in the management and control of the corporate affairs by the election of a director. Unless the conversion of preferred stock into bonds can be regarded as a valid change of their status in respect to both the corporation and its general creditors, there can be no doubt but that the preferred stockholders cannot be regarded as creditors of the corporation in their relation to the rights of other creditors. Ellsworth v. Lyons, supra, and Hamlin v. Toledo, St. L. & K. C. R. Co., supra.

But the decision of the question here presented need not rest entirely upon the broad declarations of public policy found in the decisions of the courts. The conversion of the preferred stock of a corporation into its bonds necessarily must result in a corresponding reduction of the corporate capital. We find that section 560 of the Kentucky Statutes (1893, c. 171, p. 612, § 23) provides as follows: "Any liability of corporations * * * or the rights or remedies of the creditors thereof * * * shall not in any way be lessened or impaired * * * by the decrease in the capital stock of any corporation."

█ By the re-enactment of section 564 by the Acts of 1910 (chapter 79) with the addition of the provision authorizing conversion of stock into bonds, the Legislature expressed no purpose or intention to repeal or alter the pertinent provisions of

section 560, above set out. It is a familiar rule of construction prevailing in Kentucky and elsewhere that a legislative enactment will never be interpreted as inferentially repealing a prior statute unless the apparent conflict between the new act and the old one cannot reasonably be harmonized and reconciled so as to leave both statutes operative and effective. Ex parte Lawrence, 204 Ky. 568, 265 S.W. 287; Schultz v. Ohio County, 226 Ky. 633, 636, 11 S.W.(2d) 702. It must be presumed that when the members of the General Assembly re-enacted section 564 by the Act of 1910, they did so with full knowledge of the provisions of section 560, which was and had been in effect since 1893. If they had intended to repeal or modify section 560, it is reasonable to presume that they would have clearly expressed that intention. By construing the provisions of section 564, as re-enacted in 1910, relating to redemption of corporate stock, so as to make them applicable as between the corporation and its stockholders, and not to creditors, the new act is in full harmony with the provisions of section 560, and is fully consistent therewith. Such a construction fulfills the requirement to construe apparently conflicting statutes so that both shall remain operative and effective.

In the light of these provisions of the Kentucky Statutes and in view of the public policy of the state, as declared and emphasized by the cases above referred to, the conclusion seems inevitable that the statutory authority contained, in general terms, in section 564-1 of the Kentucky Statutes, empowering a corporation to issue preferred stock and to provide for its redemption by conversion into bonds or other obligations of the corporation "upon such terms as may be prescribed by it," does not authorize or empower a corporation to give preferred stockholders priority to or equality with the claims of creditors. The power conferred by the statute to create such preference or priority in favor of preferred stockholders, under long-established principles of public policy, must be construed as limited in its effect and operation to the relation of the different classes of stockholders as between themselves and the corporation and not applicable or effective to the detriment of creditors. In other words, regardless of the terms upon which a corporation and its stockholders may contract with each other and regardless of their good faith in creating liabil-

ities, obligations, or priorities as between themselves, it is the public policy of Kentucky firmly established in its laws and of long standing in recognition by its courts that before a corporation may be generous to its stockholders it must first be just to its creditors.

In view of the above conclusions, it seems to be unnecessary to enter into a discussion of the constitutional question raised by the exceptions.

A decree will be drawn and entered sustaining the exceptions to the trustee's report and adjudging the rights of the creditors to be superior to the rights of the preferred stockholders who have converted their stock into bonds as well as to all other stockholders of the corporation.